

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CHERA ANN SIMPSON                        :   CASE NO. 3:02CV1471 (MRK)
    PLAINTIFF,

VS.

PATRICIA DENARDO, NEIL
O'LEARY, EDWARD D.
FLAHERTY, DAVID BALNIS,
DETECTIVE ROBLES, AND
MARK DEAL,
    DEFENDANTS.                         :   OCTOBER 23, 2003

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### I.    PRELIMINARY STATEMENT

This is a 42 U.S.C. § 1983 action filed by the plaintiff

against the following Waterbury Police Officers, Lieutenant

Neil O'Leary, Chief Edward D. Flaherty, Detective David Balnis,

Detective Angel Robles and Lieutenant Mark Deal.  The claims

arise from plaintiff's arrest on an arrest warrant on July 10,

2001 on breach of peace charges related to plaintiff's actions

and conduct on April 21, 2001.  Plaintiff and another woman

were involved in a dispute over a parking space at the Brass
Mill Mall in Waterbury.[1]

Following the incident and before both plaintiff and
Denardo were arrested, efforts were made to resolve the dispute
short of the arrest.  In fact, initially, plaintiff readily
agreed to withdraw her complaint if Denardo took an HIV test.
Denardo's agreement to take the test and the test results were
made known to the plaintiff.  Inexplicably, plaintiff then
reneged on the agreement and pursued her criminal complaint to
have Denardo arrested.  Ultimately, both plaintiff and Denardo
were arrested.

Plaintiff further alleges that she was treated differently
from Denardo when they were processed at the Waterbury Police
Department following their arrests.

The state's attorney refused to prosecute either plaintiff
or Denardo for their actions.  The state's attorney disposed of
the case and admonished both plaintiff and Denardo for allowing

---

[1] The other woman, Patricia Denardo, (hereinafter "Denardo") was also arrested and is a co-defendant in this action. She is represented by separate counsel.

**SACK, SPECTOR AND KARSTEN, LLP** • *ATTORNEYS AT LAW*
836 FARMINGTON AVE•WEST HARTFORD, CT 06119-1544•(860) 233-8251•JURIS NO. 52776

the "silly" incident to "snowball" into "irrational

proportions."  Exhibit F.

As set forth below, it is clear that under the established

jurisprudence of 42 U.S.C. § 1983 et seq. the plaintiff

suffered no deprivation of any federal constitutional right by

virtue of her arrest.  Beyond doubt, because her arrest was

based on probable cause, no civil rights liability can

therefore attach to these defendants.

When plaintiff's allegations are stripped of conclusory

characterizations and hyperbole, the absence of any cognizable

constitutional deprivation becomes apparent.  Upon the

undisputed evidence, plaintiff fails to establish any viable

federal cause of action against any defendant, under

established principles of law.

## II.    **STANDARD FOR SUMMARY JUDGMENT**

A motion for summary judgment should be granted if the

court determines that there is no genuine issue of material

fact to be tried and that the fact as to which there is no such

issue warrants judgment for the moving party as a matter law.

Fed.R.Civ.P. 56(c); see generally Celotex Corp. v. Catrett, 477

**SACK, SPECTOR AND KARSTEN, LLP** • *ATTORNEYS AT LAW*
836 FARMINGTON AVE•WEST HARTFORD, CT 06119-1544•(860) 233-8251•JURIS NO. 52776

U.S. 317, 322-23 (1986); <u>Cronin v. Aetna Life Ins. Co.</u>, 46 F.

3d 196, 202 (2d Cir. 1995). The burden of showing that no

genuine factual dispute exists rests on the party seeking

summary judgment. <u>Adickes v. S.H. Kress & Co</u>., 398 U.S. 144

(1970); <u>Cronin</u>, 46 F.3d at 202.

The Second Circuit has ruled that "mere conjecture or

speculation by the party resisting summary judgment does not

provide a basis upon which to deny the motion." Conjecture or

speculation by the party resisting summary judgment does not

provide a basis upon which to deny the motion." <u>Johnson v.</u>

<u>Carpenter Technology Corp</u>., 723 F.Supp 180, 182 (D.Conn. 1989)

(emphasis added). "The mere existence of a scintilla of

evidence in support of the [non-movant's] position will be

insufficient; there must be evidence on which the jury could

reasonably find for the [non-movant]." <u>Anderson v. Liberty</u>

<u>Lobby, Inc</u>., 477 U.S. 242 (1986).

If the non-moving party "has failed to make a sufficient

element of its case with respect to which it has the burden of

proof" then summary judgment is appropriate. <u>Celotex Corp. v.</u>

<u>Catrett</u>, 288 U.S. 317, 323 (1981).

**SACK, SPECTOR AND KARSTEN, LLP** • *ATTORNEYS AT LAW*
836 FARMINGTON AVE • WEST HARTFORD, CT 06119-1544 • (860) 233-8251 • JURIS NO. 52776

A party "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electrical Industrial Co. v. Zenith Radio Co. 475 U.S. 574, 586 (1986). Rather, the opposing party must "offer some hard evidence showing its version of the events is not wholly fanciful." D'Amico v. City of New York 132 F.3d 145, 147 (2d Cir. 1988).

III. **LAW AND ARGUMENT**

A. **PROBABLE CAUSE EXISTED TO ARREST THE PLAINTIFF**

There was ample probable cause to arrest the plaintiff.

Probable cause to arrest exists if, at the moment of the arrest, the facts and circumstances within the relevant actor's knowledge and of which they had reasonably reliable information was adequate to warrant a prudent person in believing that the object of his suspicions had perpetrated or was poised to perpetrate an offense. See Beck v. Ohio, 379 U.S. 89, 91, 95 S.Ct. 223, 13 L.Ed.2d 142 (1964). By definition, the determination [of probable cause] does not require scientific certainty. See Illinois v. Gates, 462 U.S. 213, 235, 103 S.Ct. 2317, L.Ed.2d 527 (1983).

**SACK, SPECTOR AND KARSTEN, LLP** • *ATTORNEYS AT LAW*
836 FARMINGTON AVE•WEST HARTFORD, CT 06119-1544•(860) 233-8251•JURIS NO. 52776

The quantum of evidence necessary to establish probable

cause exceeds mere suspicion, but "is substantially less than

that required for conviction." <u>State v. Dennis</u>, 189 Conn. 429,

341 (1983); and must constitute more than rumor, suspicion or

even a strong reason to suspect. <u>United States v. Fisher</u>, 702

F.2d 372, 375 (2nd Cir. 1985). The Supreme Court has urged

courts not to apply stringent legal standards in evaluating an

officer's determination of probable cause. Because many

situations, which confront officers in the course of executing

their duties, are more or less ambiguous, room must be allowed

for some mistake on their part. <u>Brinegar v. United States</u>, 38

U.S. 160, 175 (1949). The court went on to state that the

probable cause basis for an arrest is based upon "the factual

and practical considerations of every day life on which

reasonable and prudent man, <u>not legal technicians, act</u>."

<u>Illinois v. Gates</u>, 462 U.S. 231, 231 (1983) citing <u>Brinegar</u>, at

176. Probable cause is a fluid concept, which cannot be

reduced to a neat set of legal rules. <u>See e.g.</u>, <u>United States</u>

<u>v. Sokolow</u>, 490 U.S. 1 (1989). It follows that one who asserts

the existence of probable cause is not a guarantor either of

**SACK, SPECTOR AND KARSTEN, LLP** • *ATTORNEYS AT LAW*
836 FARMINGTON AVE•WEST HARTFORD, CT 06119-1544•(860) 233-8251•JURIS NO. 52776

the accuracy of the information upon which he has reasonably

relied or of the ultimate conclusion that he reasonably drew

there from.  See, United States v. Fibueroa, 818 F.2d 1020 (1st

Cir. 1987).  "[A]n arrest is not unlawful merely because the

information on which it is based is wrong."  McKinney v.

George, 726 F.2d 1183, 1187 (7th cir. 1983).

Moreover, as in this case, where an arrest warrant was

obtained, the case for the defendants is strengthened.  The

issuance of an arrest warrant is presumptive evidence that

probable cause existed to arrest the plaintiff on the stated

charges.  "As an additional consideration, an arrest pursuant

to an outstanding warrant is presumptively valid."  Golino v.

City of New Haven, 950 Fed. 864 (2nd Cir. 1991).  "No civil

action is available to a plaintiff under § 1983 for an arrest

made pursuant to a valid arrest warrant."  Baker v. McCollan,

443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed. 2d 433 (1979).

SACK, SPECTOR AND KARSTEN, LLP • ATTORNEYS AT LAW
836 FARMINGTON AVE • WEST HARTFORD, CT 06119-1544 • (860) 233-8251 • JURIS NO. 52776

In the present case, the arrest warrant affidavit clearly supported a finding that probable cause existed to arrest the plaintiff on charges of breach of peace.[2]

The basis of the probable cause for the charges of breach of peace is supported by the following undisputed facts:

1.    Ms. Denardo provided police with a sworn statement in which she claimed that the plaintiff drove her car towards Ms. Denardo and her six-year-old granddaughter and cut in front of their path of travel as they walked into the mall.  Exhibit C.

2.    Ms. Denardo's sworn statement referenced the fact that the plaintiff began yelling and shouting profanities at Ms. Denardo in front of her granddaughter.  In addition, plaintiff threatened to have Ms. Denardo's car towed and Ms.

---

[2] § 53a-181. Breach of the peace: Class A or B misdemeanor.

(a)     A person is guilty of breach of the peace when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) Engages in fighting or in violent tumultuous or threatening behavior in a public place; or (2) assaults or strikes another; or (3) threatens to commit any crime against another person or his property; or (4) publicly exhibits, distributes, posts up or advertises any offensive, indecent or abusive matter concerning any person; or (5) in a public place, uses abusive or obscene language or makes an obscene gesture; or (6) creates a public and hazardous or physically offensive condition by any act which he is not licenses or privileged to do; or (7) places a nonfunctional imitation of an explosive or incendiary device in a public place. For the purposes of this section, "public place" means any area that is used or held out for use by the public whether owned or operated by public or private interests.

(b)     Breach of the peace is a Class B misdemeanor, except that violation of subdivision (7) or subsection (s) of this section is a Class A misdemeanor.

SACK, SPECTOR AND KARSTEN, LLP • ATTORNEYS AT LAW
836 FARMINGTON AVE • WEST HARTFORD, CT 06119-1544 • (860) 233-8251 • JURIS NO. 52776

Denardo arrested.  These comments frightened Denardo's

granddaughter and the granddaughter began to cry.  Ms. Denardo

also claimed in her sworn statement to the police that

plaintiff scratched her arm.  Exhibit C.

3.   Ms. Denardo's sworn statement referenced the fact

that the plaintiff blocked Ms. Denardo's vehicle from exiting

the parking lot and plaintiff refused to move her car, even

after her being requested to do so by the mall security guard.

Plaintiff's actions caused alarm and annoyance to Ms.

Denardo.  As such, these facts as presented to the

investigating officer were sufficient to satisfy the requisite

probable cause standards in support of the charge of breach of

peace.

Accordingly, plaintiff's claims sounding in the lack of

probable cause should be dismissed and summary judgment be

entered on behalf of the defendants.

SACK, SPECTOR AND KARSTEN, LLP • ATTORNEYS AT LAW
836 FARMINGTON AVE • WEST HARTFORD, CT 06119-1544 • (860) 233-8251 • JURIS NO. 52776

## B.    QUALIFIED IMMUNITY

Even assuming there is a question whether probably cause existed, there are no material facts to defeat the defendants' entitlement to the defense of qualified immunity.

Qualified immunity is appropriately raised by a motion for summary judgment.  Butz v. Economou, 438 U.S. 478, 507-508, 98 S.Ct. 2894, 57 L. Ed. 895 (1978).  When qualified immunity is raised by a motion for summary judgment, "plaintiffs may not unwrap a public officer's cloak of immunity from suit simply by alleging even meritorious factual disputes relating to probable cause, when those controversies are nevertheless not material to the ultimate resolution of the immunity issue."  Cartier v. Lussier, 955 F.2d 841, 845 (2d Cir. 1992).  Summary judgment has been encouraged in its use for this purpose.  See, e.g., Celotex, supra; H.L. Hayden Co. of N.Y. v. Siemans Medical Systems, 879 F.2d 1005, 1011 (2d Cir. 1989); Knight v. U.S. Fire Insurance Co., 804 F.2d 9, 12 (2d Cir. 1986) cert. denied 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1989).  It is particularly appropriate in cases under 42 U.S.C. 1983 involving insubstantial claims such as this case.  Harlow v.

SACK, SPECTOR AND KARSTEN, LLP • ATTORNEYS AT LAW
836 FARMINGTON AVE • WEST HARTFORD, CT 06119-1544 • (860) 233-8251 • JURIS NO. 52776

Fitzgerald, 457 U.S. 800, 816, 102 S.Ct. 2727, 73 L.Ed.2d 3961

(1983). The qualified immunity afforded to police officers

accused the Fourth Amendment violations is essential to ensure

that police officers will not shy from their socially critical

duties for fear of personal liability if, in hindsight, their

"reasonable" judgment is mistaken.

> If every mistaken seizure were to subject
> police officers to personal liability under
> § 1983, those same officers would come to
> realize that the safe and cautious course
> of action would always be to take no
> action. The purposes of immunity are not
> served by a police force intent on escaping
> liability to the cumulative detriment of
> those duties, which communities depend on
> officers to perform.

Gooden v. Howard County, M.D., 954 F.2d 960, 967 (4th Cir.

1992).

     "Qualified immunity is 'an entitlement not to stand trial

or face the other burdens of litigation.'" Saucier v. Katz,

533 U.S. 194, 200 (2001) (quoting Mitchell v. Forsyth, 472 U.S.

511, 526 (1985)). "[G]overnment officials performing

discretionary functions generally are shielded from liability

for civil damages insofar as their conduct does not violate

**SACK, SPECTOR AND KARSTEN, LLP** • *ATTORNEYS AT LAW*
836 FARMINGTON AVE• WEST HARTFORD, CT 06119-1544 • (860) 233-8251 • JURIS NO. 52776

clearly established statutory or constitutional rights of which
a reasonable person would have known." Harlow v. Fitzgerald,
457 U.S. 800, 818 (1982).  The burden of raising and
establishing the affirmative defense of qualified immunity,
either in a motion for summary judgment or at trial, rests on
the defendants.  See Lee v. Sandberg, 136 F.3d 94, 101 (2d Cir.
1997).

When considering the issue of qualified immunity, a court
first determines whether the evidence, viewed in the light most
favorable to the plaintiff, demonstrates that the officer's
conduct violated a constitutional right.  See Saucier, 533 U.S.
at 201.  If so, the court must then determine whether "[t]he
contours of the right [were] sufficiently clear that a
reasonable official would have underst[ood] that what he [did]
violate[d] that right." Anderson v. Creighton, 483 U.S. 638,
640 (1987).  In essence, the Court must determine "whether it
would be clear to a reasonable officer that his conduct was
unlawful in the situation he confronted." Saucier, 533 U.S. at
202.

**SACK, SPECTOR AND KARSTEN, LLP** • *ATTORNEYS AT LAW*
836 FARMINGTON AVE • WEST HARTFORD, CT 06119-1544 • (860) 233-8251 • JURIS NO. 52776

In the present case, the defendants were entitled to consider Denardo's cross criminal complaint made against the plaintiff. Denardo's complaint was worthy of the same scrutiny and response as the defendants gave to plaintiff's complaint.

The defense of qualified immunity has also been applied in situations involving the issuance of arrest warrants.

In Malley v. Briggs, 475 U.S. 335 (1986), the U.S. Supreme Court held that police officers may be entitled to qualified immunity for arrests following the issuance of warrants by a judge or magistrate. The Court explained that the issue is "whether a reasonably-trained officer in [the defendants'] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." Malley, 475 U.S. at 345. It concluded that the officer "will not be immune if, on an objective basis, it is obvious that no reasonably competent officer could have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized." Id. at 341. The Second Circuit elaborated on Malley by stating that:

> A police officer who relies on good faith
> on a warrant issued by a neutral and
> detached magistrate upon a finding of
> probable cause is presumptively shielded by
> qualified immunity from personal liability
> for damages.  Golino v. City of New Haven,
> 950 F.2d 864, 970 (2d Cir.1991).  Police
> activity conducted pursuant to a warrant
> rarely will require any deep inquiry into
> reasonableness because a warrant issued by
> a magistrate normally suffices to establish
> that a law enforcement officer has acted in
> good faith.  United States v. Leon, 468
> U.S. 897, 922 (1984).  However, "the
> officer's reliance on the magistrate's
> probable-cause determination and on the
> technical sufficiency of the warrant he
> issues must be objectively reasonable."
> Id.  The court's inquiry into
> reasonableness is limited to determining
> whether a reasonably well-trained officer
> would have known that the warrants were
> illegal despite that magistrate's
> authorization.  Id. at 922 n. 23.

Simms v. Village of Alboin, New York, 115 F.3d 1098, 1106 (2d Cir. 1997).

Thus, the issuance of a warrant creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause to support it.  See Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991), cert. denied, 505 U.S. 1221 (1992).  The Court must next examine whether there is evidence to overcome this presumption such that a reasonable

SACK, SPECTOR AND KARSTEN, LLP • ATTORNEYS AT LAW
836 FARMINGTON AVE • WEST HARTFORD, CT 06119-1544 • (860) 233-8251 • JURIS NO. 52776

juror could conclude that the officers' reliance on the judge's probable cause determination and on the technical sufficiency of the warrant was objectively unreasonable.  Id.  As indicated by the Second Circuit, this inquiry involves an examination of whether a reasonably well-trained officer would have known that the warrant was illegal despite the judge's authorization.

A plaintiff may mount such a challenge by making a "'substantial preliminary showing' that the affiant knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit and that the allegedly false statement was 'necessary to the finding of probable cause.''  Golino, 950 F.2d at 870 (quoting Franks v. Delaware, 438 U.S. 154, 155-56 (1978)0.  "Where an officer knows, or has reason to know, that he has materially misled a magistrate on the basis for a finding of probable cause,…the shield of qualified immunity is lost."  Golino, 950 F.2d at 871.  Here, Simpson claims that the warrant application contained deliberate, material misrepresentations and omissions.  The Second Circuit has summarized the appropriate analysis as follows:

A Section 1983 plaintiff challenging a
warrant on this basis must make the same
showing that is required at a suppression
hearing under Franks v. Delaware, 438 U.S.
154, 155-56 (1978); the plaintiff must show
that the affiant knowingly and
deliberately, or with a reckless disregard
of the truth, made false statements or
material omissions in his application for a
warrant, and that such statements or
omissions were necessary to the fining of
probable cause.  Golino, 950 F.2d at 870-
71; see Franks, 438 U.S. at 171-72.
Unsupported conclusory allegations of a
falsehood or material omission cannot
support a Franks challenge; to mandate a
hearing, the plaintiff must make specific
allegations accompanied by an offer of
proof. See Franks, 438 U.S. at 171.
Moreover, when police officers move for
summary judgment on the basis of qualified
immunity, "[p]laintiffs may not unwrap a
police officer's cloak of immunity from
suit simply by alleging even meritorious
factual disputes relating to probable
cause, when those controversies are
nevertheless not material to the ultimate
resolution of the immunity issue." Cartier
v. Lussier, 955 F.2d 842, 845 (2d Cir.
1992).  Disputed issues are not material
if, after information and supplying any
omitted facts, the "corrected affidavit"
would have supported a finding of probable
cause. Soares v. State of Connecticut, 8
F.3d 917, 920 (2d Cir.1993); Cartier, 955
F.2d at 845.

Valardi v. Walsh, 40 F.3d 569, 573-74 (2d Cir.1994).

16

SACK, SPECTOR AND KARSTEN, LLP • ATTORNEYS AT LAW
836 FARMINGTON AVE•WEST HARTFORD, CT 06119-1544•(860) 233-8251•JURIS NO. 52776

During her deposition, plaintiff was provided with a copy of the arrest warrant prepared by Detective Balnis. Plaintiff was unable to cite to any portion of the arrest warrant affidavit to establish the requisite "substantial preliminary showing" that the defendants "materially misled" the judge with false statements or material omissions. In fact, plaintiff conceded that the portion of the warrant she contested was in fact Denardo's allegations and not any misrepresentation by the defendants. Exhibit A, pages 77 - 87.

In the present case, the defendants did not rush to judgment concerning the plaintiff's involvement in the incident. These efforts culminated the filing of an objective arrest warrant affidavit for plaintiff's arrest. Accordingly, the defendants' actions are worthy of this Court's protection pursuant to the doctrine of qualified immunity.

**1.    Malicious Prosecution**

The defendants also argue that they are entitled to qualified immunity as to plaintiff's § 1983 claim of malicious prosecution. A § 1983 claim based on malicious prosecution is based on the four elements of the Connecticut common law tort

for malicious prosecution.  See e.g. Janetka v. Dabe, 892 F.2d

187, 189 (2d Cir. 1988).  Under Connecticut law, "[a]n action

for malicious prosecution against a private person requires a

plaintiff to prove that (1) the defendant initiated or procured

the institution of criminal proceedings against the plaintiff;

(2) the criminal proceedings have terminated in favor of the

plaintiff; (3) the defendant acted without probable cause; and

(4) the defendant acted with malice, primarily for a purpose

other than that of bringing an offender to justice."  McHalve

v. W.B.S. Corp., 446 A.2d 815, 817 (Conn. 1982).

　　In addition, in order to allege a cause of action for

malicious prosecution under § 1983, [a plaintiff] must assert,

in addition to the elements of malicious prosecution under

state law, that there was . . . a sufficient post-arraignment

liberty restraint to implicate the plaintiff's fourth amendment

rights."  Rohman v. New York City Transit Auth., 215 F.2d 208,

215 (2d Cir.2000) (citing Murphy v. Lynn, 118 F.3d 938, 944-46

(2d Cir. 1997)).  "The fourth amendment right implicated in a

malicious prosecution action is the right to be free of

unreasonable seizure of the person-i.e., the right to be free

of unreasonable or unwarranted restraints on personal liberty.

A plaintiff asserting a fourth amendment malicious prosecution

claim under § 1983 must therefore show some deprivation of

liberty consistent with the concept of 'seizure.'"  Id.

(quoting Singer, 63 F.3d at 116, and citing Murphy, 118 F.3d at

944).  "[S]ince the gist of a claim for malicious prosecution

is abuse of the judicial process, a plaintiff pursing such a

claim under § 1983 [also] must show that the seizure resulted

from the initiation or pendency of judicial proceedings."  Id.

Plaintiff has failed to indicate that she was subjected to any

"post-arraignment liberty restraint."  Moreover, the defendants

assert their previous arguments that probable cause existed for

plaintiff's arrest.  Accordingly, summary judgment should enter

on behalf of the defendants, as to plaintiff's claim of

malicious prosecution.

### C.  PLAINTIFF'S SPECULATION AS TO THE PERSONAL INVOLVEMENT OF THE DEFENDANTS IS INSUFFICIENT TO CHALLENGE DEFENDANTS' ENTITLEMENT TO SUMMARY JUDGMENT.

Plaintiff's complaint relies heavily on speculation and

unsupported factual claims.

19

of unreasonable or unwarranted restraints on personal liberty.

A plaintiff asserting a fourth amendment malicious prosecution

claim under § 1983 must therefore show some deprivation of

liberty consistent with the concept of 'seizure.'"  Id.

(quoting Singer, 63 F.3d at 116, and citing Murphy, 118 F.3d at

944).  "[S]ince the gist of a claim for malicious prosecution

is abuse of the judicial process, a plaintiff pursing such a

claim under § 1983 [also] must show that the seizure resulted

from the initiation or pendency of judicial proceedings."  Id.

Plaintiff has failed to indicate that she was subjected to any

"post-arraignment liberty restraint."  Moreover, the defendants

assert their previous arguments that probable cause existed for

plaintiff's arrest.  Accordingly, summary judgment should enter

on behalf of the defendants, as to plaintiff's claim of

malicious prosecution.

### C.  PLAINTIFF'S SPECULATION AS TO THE PERSONAL INVOLVEMENT OF THE DEFENDANTS IS INSUFFICIENT TO CHALLENGE DEFENDANTS' ENTITLEMENT TO SUMMARY JUDGMENT.

Plaintiff's complaint relies heavily on speculation and

unsupported factual claims.

19

SACK, SPECTOR AND KARSTEN, LLP • ATTORNEYS AT LAW
836 FARMINGTON AVE•WEST HARTFORD, CT 06119-1544•(860) 233-8251•JURIS NO. 52776

In particular, despite naming five (5) Waterbury police officers as defendants, plaintiff fails to establish sufficient personal involvement against the officers as to her claimed injuries.  In this circuit, personal involvement of the defendant is an alleged constitutional deprivation of rights is a prerequisite to an award of damages under § 1983.  <u>Gill v. Mooney</u>, 824, F.2d 192, 196 (2d Cir. 1987); <u>McKinnon v. Patterson</u>, 568 F.2d 930, 934 (2d Cir. 1977); and <u>Al Faro Motors, Inc. v. Ward</u>, 814 F.2d 883, 886 (2d Cir. 1987).  Moreover, a defendant cannot be held personally responsible merely because of his high position of authority.  <u>See</u> <u>Wright v. Smith</u> 21 F.3d 496, 501 (2d Cir. 1994).  "A plaintiff must thus allege tangible connection between the acts of the defendant and the injuries suffered."  <u>Bass v. Jackson</u>, 790 F.2d 260, 263 (2d Cir. 1986).

**CHIEF EDWARD FLAHERTY**

Paragraphs 16 and 17 of the complaint mention Chief Flaherty.  However, the complaint does not allege any basis for a claim against Chief Flaherty.

**SACK, SPECTOR AND KARSTEN, LLP** • *ATTORNEYS AT LAW*
836 FARMINGTON AVE•WEST HARTFORD, CT 06119-1544•(860) 233-8251•JURIS NO. 52776

When asked at her deposition what facts formed the basis
of her claim against Chief Flaherty, plaintiff answered, "you'd
have to ask my attorney that question." Exhibit A, page 133.
When further pressed for the basis of her complaint, it appears
that plaintiff felt that Chief Flaherty acted inappropriately
during a telephone conversation with her. Exhibit A, page 133.

In fact, upon receipt of plaintiff's letter of complaint,
Chief Flaherty directed that an internal affairs investigation
be conducted regarding plaintiff's concern. The investigation
was conducted and the matter was resolved. Exhibit G and
Exhibit J.

The undisputed facts reveal that Chief Flaherty did not
ignore the plaintiff's concerns. Chief Flaherty responded with
a comprehensive review of the allegations. Notwithstanding the
fact that the Chief concluded that the allegations were
unsubstantiated, there is no basis to support any violation of
plaintiff's protected constitutional rights.
Accordingly, because of plaintiff's failure to state a cause of
action, summary judgment should enter on behalf of Chief
Flaherty.

**SACK, SPECTOR AND KARSTEN, LLP** • *ATTORNEYS AT LAW*
836 FARMINGTON AVE•WEST HARTFORD, CT 06119-1544•(860) 233-8251•JURIS NO. 52776

## LT. MARK DEAL

In paragraph 9 of her complaint, plaintiff claims that Lt.
Deal removed Office Alenckis from the case and ordered that co-
defendant Denardo not be arrested. This allegation is
unsupported by any material evidence.[3]

Moreover, plaintiff testified that she did not hear any of
the communication between Lt. Deal and Officer Alenckis.
Exhibit A, page 57.

In fact, Lt. Deal was in the area and overheard the radio
dispatch of the dispute at the mall. His limited involvement
in the matter was to simply advise Officer Alenckis that based
on the conflicting stories between the plaintiff and the co-
defendant Denardo, she (Officer Alenckis) could have the
parties report to the Waterbury Police Department and have the
detective bureau assist with written statements. Exhibit E.
Officer Alenckis told the plaintiff and her friend that an
arrest warrant would hold up better in court. Exhibit B, p.

---

[3] When asked to state the facts supporting her complaint against Lt. Deal, plaintiff testified "whatever they wrote
in the complaint, you have to discuss with them." Exhibit A, page 68.

**SACK, SPECTOR AND KARSTEN, LLP** • *ATTORNEYS AT LAW*
836 FARMINGTON AVE•WEST HARTFORD, CT 06119-1544•(860) 233-8251•JURIS NO. 52776

32.  The plaintiff agreed to go to the police department.
Exhibit A, pages 57, 58 and 61.

**NEAL O'LEARY AND DAVID BALNIS**

Plaintiff's claims against defendants O'Leary and Balnis
are set forth in paragraphs 11-13 of the complaint.

With respect to defendant O'Leary, plaintiff presents no
material evidence that indicates that defendant O'Leary
violated her constitutional rights.  In fact, to the contrary,
plaintiff testified that O'Leary assisted her in ensuring that
plaintiff's friend, Richard Lissandrello's statement would be
accepted as part of the investigation.[4]

With respect to plaintiff's claim that O'Leary threatened
plaintiff with arrest, plaintiff's own words contradict this
specious claim.  In her complaint to Chief Flaherty, plaintiff
made no reference to any threats by O'Leary.  Exhibit G.  In
fact, O'Leary informed the plaintiff that Denardo was "filing
charges against her for breach of peace."  It appears that only
with the initiation of the lawsuit, did the plaintiff first

---

[4] Initially, no statements were obtained from witness Lissandrello, when he and plaintiff were at the Waterbury
Police Department.  However, after plaintiff called O'Leary and complained, O'Leary was instrumental in having
the statement obtained.  Exhibit A, pages 75, 77 and 83.

**SACK, SPECTOR AND KARSTEN, LLP** • *ATTORNEYS AT LAW*
836 FARMINGTON AVE • WEST HARTFORD, CT 06119-1544 • (860) 233-8251 • JURIS NO. 52776

allege that O'Leary threatened plaintiff with arrest if she did not drop the charges.

As to the claims against O'Leary and Balnis and the arrest warrant, the plaintiff's arguments are equally unsupportable. Plaintiff claims the warrant prepared by Detective Balnis and signed by O'Leary "was grossly inaccurate and misleading in that it omitted, misstated and distorted material facts. . . ." Detective Balnis prepared the arrest warrant applications for the plaintiff and Ms. Denardo.

During plaintiff's deposition, she was asked to identify what parts of the arrest warrant formed the basis of her claims that the warrant was inaccurate and misleading.  In response, plaintiff could not attribute any meaningful inaccurate or misleading comments to defendants O'Leary and Balnis.  In fact, plaintiff agreed that Detective Balnis, in essence, prepared the warrant based on the statements of the parties involved. Exhibit A, Pages 78 -85.  Accordingly, plaintiff has failed to produce any scintilla of material evidence that O'Leary or Balnis falsified or misrepresented the plaintiff's arrest warrant application.

**SACK, SPECTOR AND KARSTEN, LLP** • *ATTORNEYS AT LAW*
836 FARMINGTON AVE • WEST HARTFORD, CT 06119-1544 • (860) 233-8251 • JURIS NO. 52776

Accordingly, O'Leary and Balnis should be afforded the Court's protection and judgment should enter on their behalf.

**Detective Angel Robles**

Paragraph 10 of the complaint provides the extent of plaintiff's claims against Detective Robles.  The extent of Detective Robles' involvement in this matter was his obtaining plaintiff's written statement regarding her (plaintiff's) interaction with Ms. Denardo.  Exhibit A, pages 63 and 71.

Detective Robles was not assigned to investigate the case. He was not assigned to prepare the arrest warrant application for the plaintiff or Ms. Denardo.  Detective Robles was not present on the day plaintiff was arrested.

In fact, with respect to the limited role Detective Robles had in this matter (taking plaintiff's written statement), plaintiff had no objection with the manner the statement was prepared or the contents of the statement.  Exhibit A, Pages 68-71.

The sole basis of plaintiff's complaint with respect to Detective Robles appear to be the fact that he would not take a statement from plaintiff's friend.  Exhibit A, Page 76.

**SACK, SPECTOR AND KARSTEN, LLP** • *ATTORNEYS AT LAW*
836 FARMINGTON AVE • WEST HARTFORD, CT 06119-1544 • (860) 233-8251 • JURIS NO. 52776

Detective Robles explained to the plaintiff that the reason for not taking the witnesses' statement was because the witness was biased in favor of the plaintiff due to their close relationship.  Exhibit A, Page 76.[5]

Plaintiff has failed to establish that Detective Robles violated any clearly established constitutional rights afforded to the plaintiff.[6]

## D.    PLAINTIFF'S EQUAL PROTECTION CLAIM

Paragraph 15 of plaintiff's complaint purportedly states that nature of plaintiff's equal protection claim.  Plaintiff claims that she was treated differently from co-defendant Denardo at the time of their arrests.

The Fourteenth Amendment of the United States Constitution provides that "[n]o State shall…deny to any person within its jurisdiction the equal protection of the laws."  This provision

---

[5] The witness statement was subsequently obtained after plaintiff contacted defendant Lt. O'Leary and requested the statement be taken. Exhibit A, Page 77.

[6] A right is "clearly established: if its contours are sufficiently clear so that a reasonable official would understand his conduct violated that right.  See McCullough v. Wyandanch Union Free School Dist., 187 F.3d 272, 278 (2d Cir. 1999). To determine whether a law is "clearly established," courts must consider "'(1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.'" Shattuck v. Town of Stratford, 233 F. Supp. 2d 301, 308 (D. Conn. 2002) (citing Jermosen v. Smith, 945 F.2d 547, 550 (2d Cir. 1991)).

**SACK, SPECTOR AND KARSTEN, LLP** • *ATTORNEYS AT LAW*
836 FARMINGTON AVE•WEST HARTFORD, CT 06119-1544•(860) 233-8251•JURIS NO. 52776

is universal in its application to "all persons within the

territorial jurisdiction, without regard to any difference of

race, of color,…of nationality, or of religion; and the

protection of the laws is a pledge of the protection of equal

laws." Yick Wo v. Hopkins, 118 U.S. 356, 369 (1886).

"It is well established that a claimant under the

Fourteenth Amendment's Equal Protection clause…must establish

intentional discrimination." Ricketts v. City of Hartford, 74

F.3d 1397, 1407 (2d Cir. 1996).

However, plaintiff's conclusory statements as to her

belief she was treated differently is not sufficient-absent

other evidence-to create a genuine issue of material fact as to

her equal protection claim. See,e.g., Meiri v. Dacon, 759 F.2d

989, 998 (2d Cir.) (Conclusory allegations of discrimination

insufficient to satisfy non-movant's burden of setting forth

specific facts demonstrating existence of genuine issue for

trial), cert. denied, 474 U.S. 829 (1994); DeLoraine v. MEBA

Pension Trust, 499 F.2d 49 (2d Cir.), cert. denied, 419 U.S.

1009 (1974) (mere conclusory statement in affidavit that

plaintiff believed he was discriminated against was

**SACK, SPECTOR AND KARSTEN, LLP** • *ATTORNEYS AT LAW*
836 FARMINGTON AVE•WEST HARTFORD, CT 06119-1544•(860) 233-8251•JURIS NO. 52776

insufficient to raise genuine issue of material fact as to plaintiff's age discrimination claim).

There is nothing in the record to suggest that any other individual in Simpson's position would not have been subject to similar investigation, arrest and processing[7]. As to her claim she was treated different at the police department when she was arrested, plaintiff conceded at her deposition that she had no specific information on how the co-defendant was processed. Exhibit A.  Pages 129 - 130.

Moreover, some of the named defendants were present on the day plaintiff was arrested and processed at the Waterbury Police Department.  Furthermore, there is no material evidence that any of these defendants orchestrated or directed the manner in which the plaintiff was processed.  Exhibit A, pages 71, 72, 85, 87 and 114.

Additionally, plaintiff erroneously attributed statements about the treatment plaintiff and Denardo were subjected to at the Waterbury Police Department on the day of their arrest. Exhibit I, pages 20-22 and 25.

---

[7] In fact, Denardo was similarly subjected to an investigation that led to an arrest warrant.

SACK, SPECTOR AND KARSTEN, LLP • ATTORNEYS AT LAW
836 FARMINGTON AVE•WEST HARTFORD, CT 06119-1544•(860) 233-8251•JURIS NO. 52776

recklessly attacked these officers because she was unhappy with the manner they conducted the criminal investigation.

Accordingly, the Court should protect these officers for the honest exercise of their discretionary powers. Judgment for these defendants, on all counts of plaintiff's complaint, is therefore appropriate.

DEFENDANTS, Lt. Neil
O'Leary, Chief Edward D.
Flaherty, Det. David Balnis,
Det. Angel Robles, and Lt.
Mark Deal

By: _____

Christopher G. Arciero
Federal Bar No. ct09199
Sack, Spector & Karsten
836 Farmington Avenue
West Hartford, CT  06119
carciero@sackspec.com
Their Attorney

30

**SACK, SPECTOR AND KARSTEN, LLP** • *ATTORNEYS AT LAW*
836 FARMINGTON AVE•WEST HARTFORD, CT 06119-1544•(860) 233-8251•JURIS NO. 52776

## CERTIFICATION

    This is to certify that a copy of the foregoing has been mailed, postage prepaid, this 23rd day of October, 2003 to the following counsel of record:

John R. Williams, Esquire
Williams & Pattis
51 Elm Street
New Haven, CT  06510


Raymond B. Rubens, Esquire
Rubens & Lazinger
295 Congress Street
P.O. Box 1555
Bridgeport, CT  06601-1555

_____
Christopher G. Arciero

SACK, SPECTOR AND KARSTEN, LLP • ATTORNEYS AT LAW
836 FARMINGTON AVE•WEST HARTFORD, CT 06119-1544•(860) 233-8251•JURIS NO. 52776