UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT 

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
                                  \*
CHERA ANN SIMPSON,          \*
          Plaintiff,    \*

                        \* Civil Action No.
VS.                  \* 3:02CV1471 (RNC)
                        \* June 27, 2003
PATRICIA DENARDO, NEIL O'OLEARY,  \*
EDWARD D. FLAHERTY, DAVID BALNIS,  \*
DETECTIVE ROBLES and MARK DEAL,   \*
          Defendants.    \*
                                    \*
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## DEPOSITION OF RICHARD LISSANDRELLO

Taken on behalf of the Defendants in the above-entitled cause, before Patricia Tyszka, Registered Merit Reporter, Notary Public, in and for the State of Connecticut, on Friday, June 27, 2003, at 1:40 p.m., at the offices of Sack, Spector & Karsten, 836 Farmington Avenue, West Hartford, Connecticut, pursuant to the Federal Rules of Civil Procedure.

*PATRICIA TYSZKA, LSR, RMR*
*COURT REPORTING SERVICES*
*189 Old Forge Road*
*Riverton, Connecticut  06065-1214*
*(860)379-7955  FAX (860)379-7955*

1    the mall, and she left that older lady out there with

2    us, with the police and us.  Like, the kid just

3    disappeared.

4         Q    After Lieutenant Deal shows up, talks to the

5    female officer, she comes back and now explains to both

6    Ms. Simpson and Mrs. Denardo that you need to go to the

7    station to --

8         A    No.  She explains to us:  Myself and

9    Ms. Simpson.

10        Q    That you two have to go to the station to fill

11   out the complaint?

12        A    Right.  Fill the complaint out.

13        Q    Did you agree to do that?

14        A    Yeah.

15        Q    Did you have any objection or question the

16   officer about that?

17        A    No.  No, we just went right down to the police

18   station.

19        Q    Did you go straight from the scene to the

20   station?

21        A    Yeah.  You know, the police officer told us to

22   go.

23        Q    What happened when you went to the station?

24        A    We had a detective take down Chera's statement

25   and stuff.

```
1        Q    Do you know that detective's name?

2        A    No.  I can't remember that.

3        Q    Can you describe what he looks like?

4        A    I can't even remember.

5        Q    Were you in the room when Ms. Simpson gave

6   this detective the statement?

7        A    No.  He told me to sit outside.

8        Q    Do you know if Ms. Simpson gave a statement?

9        A    Apparently she did, yeah.

10       Q    Was it in writing?

11       A    Must have been in writing.

12       Q    Why do you think that?

13       A    Because Chera's like -- para -- what do you

14  call?  Paralegal?

15       Q    So she knows the legal system well?

16       A    Yeah, she knows a little bit about it.  And

17  she -- I guess she did, you know.  She wouldn't have

18  gone through all this trouble without getting some kind

19  of -- something in writing.

20       Q    What were you doing while she was inside --

21       A    I was sitting on the chair outside.  Outside

22  the office there.

23       Q    Did you think anything was done

24  inappropriately at that point?

25       A    No, they were -- they were nice to us.
```

1    Q    And they --

2    A    I remember, too -- this is going back -- that

3  Chera wanted to know if the police officer was going to

4  take down my statement being that I was a witness, and

5  he said no for some reason.  I forgot the reason why,

6  but -- but then he did.  I think he did.  I forget now.

7  It's going to be hard because it's so long.

8    Q    But he initially wasn't going to take your

9  statement and then he --

10   A    Right.  He said it really doesn't -- this

11 doesn't matter, it really -- for some reason it wouldn't

12 really hold up or some point, I don't -- in court I

13 guess, I don't know.

14   Q    Did she or you --

15   A    Then finally he said, okay, we'll take down

16 the statement.

17   Q    Did you voice a concern when he initially was

18 not going to take a statement?

19   A    Me?

20   Q    Yes.

21   A    No.

22   Q    Did Ms. Simpson voice a --

23   A    No, because I don't know anything about the

24 law.  I'm an illustrator.  I figure, you know, these

25 guys know what they're talking about, not me.

23

1    Q    Did you hear this detective or anybody else up

2  to this point talk about Mrs. Denardo, the other woman

3  who was --

4    A    No.

5    Q    Did you hear any of these people up to this

6  point try to talk Ms. Simpson out of filing a complaint?

7    A    No.

8    Q    Eventually you gave a written statement to the

9  police?

10    A    Yes.

11    Q    And had you also given a verbal statement to

12  the female officer who was the first responding officer?

13    A    Yes.  That night, outside the squad car.

14    Q    What happened after you left the police

15  station that first day?

16    A    Well, we went back to Ms. Simpson's apartment,

17  and she said she was going to take a shower and then she

18  wanted to go to the hospital.

19    Q    Did she, in fact, take a shower?

20    A    Oh, I don't know.  I just left then.

21    Q    Oh, you left her there?

22    A    Yeah.

23    Q    You didn't accompany her to the hospital after

24  that?

25    A    No.  She didn't want -- she -- when she goes

1    sudden this woman comes out from the mall and grabs this

2    the girl by the hand, walks her back into the mall.

3    Where did she come from?  Who is she?  You know?

4         Q    Did Ms. Simpson ever talk to you about

5    following through on the complaint to have Mrs. Denardo

6    arrested?

7         A    Yes, she did.  She said she wasn't going to

8    put up with anything like that.  One thing about Chera,

9    boy, when she makes her mind up, that's it.  You know,

10   there's no stopping her, she's like a stone wall.  You

11   know, and she's good that way.  She said that woman

12   was -- she was wrong and she was going to get her; you

13   know, have her arrested.  She shouldn't have been

14   parking where she was.  You know, that's strictly for

15   handicapped people, you know, she could have parked --

16   there were plenty of spaces around there that night, the

17   north side of that building.

18        Q    So it was your impression Ms. Simpson was just

19   going to follow this suit to the end, no matter what it

20   took?

21        A    Yes.  She was in the right and this woman was

22   in the wrong.  She shouldn't have reached in and grabbed

23   her and assaulted her like that.

24        Q    What else did you discuss?

25        A    The next day?  That's about it, I guess.

1    called up and she said, "You're probably going to get

2    subpoenaed.  Be ready for it."  And that's the first

3    time I heard from her in months.  I mean months.

4         Q    As you look back, from now back until the day

5    this happened, April 21st, 2001, did you have any

6    concerns about the way the Waterbury police responded to

7    this case?

8         A    Concerns?  I would say they had me -- like

9    they had both of us -- first they said they were going

10   to arrest her and then they didn't.  Then they say

11   they're going to put out -- write out a warrant for her

12   arrest, which I remember the woman -- the police officer

13   said it would hold up better in the courtroom -- I think

14   that's what she said; I don't know -- she said, by doing

15   that.  And I says okay.

16        Q    You didn't have a problem with that, did you?

17        A    No.

18        Q    Did Ms. Simpson?

19        A    I don't think -- Chera didn't have a problem

20   with that either.

21        Q    And you don't know anything about the way the

22   criminal justice system works?

23        A    No.

24        Q    About seeking out arrest warrants or making

25   on-site arrests, do you?

<u>AFFIDAVIT</u>

I, RICHARD LISSANDRELLO, of the City of Waterbury and State of Connecticut being duly sworn depose and say that I am over the age of eighteen (18) and I believe in the obligation of an oath:

1. On Saturday, April 21, 2001, at approximately 6:45 p.m., my friend, Chera Simpson, and I went to the Brass Mill Mall to have coffee. As Chera was parking the car we noticed a woman with a young girl parking in the three foot access areas designated for a wheelchair. Chera rolled down the window and identified herself as Chairman of the Commission for Disabilities for the City of Waterbury and nicely explained to the woman that that area was reserved for wheelchairs. The woman then got very angry and said to Chera "show me your identification and I'll show you mine". Chera then showed this woman her identification then turned to me and said "this woman is acting irrational lets just take her license plate and let the police handle this". Without warning, as Chera was attempting to drive away, the woman came into the window of Chera's car and started assaulting her by grabbing her face, scratching her, etc. Chera was in a seatbelt as was I and was having trouble getting this woman off of her. The young girl with the women was crying and yelling "grandma, stop, your going to get arrested." When she finally was able to get the woman out of the car and roll up the window she immediately dialed 911 on her cell phone as the woman was still attempting to break into the car.

2. The police arrived and the officer questioned both of us and then told the woman that she had to place her under arrest for assault. The woman had claimed to the officer that Chera had sworn at her which she definitely did not do and I assured the officer that Chera would not have sworn in front of a child regardless of the situation. I heard the officer tell the woman that even if she had been sworn at she still had to be arrested for assault because she admitted she reached into Chera's car and she had no right to do this. Then another car arrived who we found out the following day was Lt. Deal of the Waterbury Police. He motioned for the officer and spoke to her for approximately ten to fifteen minutes then the officer then came to our car and asked us if we would go to the police department to sign a statement which we did. We were then told the statement was for a warrant and the Detective told us not to ask any questions because he was simply taking Chera's statement and did not know anything. Chera asked the detective who was taking her statement if he would take my statement also since I was a witness. He refused and said I was a biased witness. The police officer from the scene was then called again because Chera noticed that the woman had damaged her car as well. Chera asked the officer why the

*Richard J. Lissandrello*
RICHARD LISSANDELLO

Page 1 of 2

woman was not arrested and why a warrant had to be done and the Officer told her a warrant was much better and held up better in court. We then left the police station and went to Chera's home so she could call her doctor which she did and he advised her to go to the emergency room.

RICHARD LISSANDELLO

Sworn and subscribed to before me this _27_ day of April, 2001

Notary Public

Page 2 of 2

DATE: 04/29/2001

CASE No.# : 2001-030301

# VOLUNTARY STATEMENT

PLACE STATEMENT TAKEN: 255 East Main St

I, the undersigned, Patrica  Denardo  of 64 Dalton St  Oakville, CT, Tel.# 860=274-6813, being 64 years of age, born at Waterbury Ct. on 03/14/1937, do hereby make the following statement to William Jones, having first been identified as a Waterbury Police Detective.

My name is Patricia Denardo, and my statement below is in regards to an incident which occurred this past April 21,2001, while myself and my 6 yr old  grand-daughter were at the Brass City Mall, in Waterbury. I am also aware my statement may be used in a court of law.
This past Saturday, April 21,2001, somewhere in the area of 6:30 to 7:00PM, I  was taking my 6 year old grand-daughter to the Brass City Mall, so she could pick out her birthday present. At the present time, and for the past several years, I, have been handicapped with multiple sclerosis, and I am presently in possession of a State of Connecticut Handicap Parking Permit.  When I got to the Mall I drove around looking for a handicap parking spot but there were none available. I did see the area which is marked off with white lines in the handicap area and because I was only going to be in the mall for no more than 10 minutes I parked my car in the white lined area. My grand-daughter and I got out of my car and began walking towards the Mall.  We were in the crosswalk walking towards the entrance to Penny's Department Store where all of a sudden of this bluish green car cut right in front of us, almost hitting us. The female driver of the car rolled her window down and started yelling at me, telling me I can't park my car in the white line area of the handicap parking. I asked this women who she was and she told me she was a Chairman for the Commission for the Disabilities, she then handed me her card. I tried to explained to this women that I did have a Handicap parking permit, but she didn't seem to care. She continued yelling at me, but then she started telling to "move my fucking car right now, after I told her I would only be in the mall for a very few minutes. She again continued yelling and screaming at me to move my car. I explained to his women, who by this time was screaming hysterically, causing grand daughter to get scared and begin crying, I was not walking all the way back to my car. This women then started threatening to have my car towed from the parking lot. When my grand daughter her this she got hysterical and started crying, thinking they were going to take my car and we couldn't get back home. I tried to explained to my grand daughter this women was only fooling and this was when I walked over to the women's car, I did reach inside the car and touch the women' face, telling her, with a smile on my face, trying to clam my grand daughter down, to please tell my grand daughter you were only fooling. This when the women grabbed my hand, scratched it, and started  screaming & swearing I was crazy, which again made my grand daughter get more upset, especially when my grand daughter saw the marks on my hand from this women. I didn't want myself, or my grand daughter to be subjected to this crazy women, so I took my grand daughter in to the Mall, sat her down on one of the benches and tried to get her to calm down. I took my grand daughter to the store her Aunt works in and left her there to pick out her birthday present. I

---

The facts herein contained are true and correct, and knowing that any false statement is subject to prosecution under the penalties of Connecticut State Statute 53a-157b, I have given the above statement of my own free will without threat or promise.

Signed _Patricia Denardo_
Signature of Person giving voluntary statement

Witness: _____

Supervisor _____ 4/29/0
Subscribed and Sworn to before me          Date

Page 1 of 2

ORIGINAL COPY          REV. 1 CS

DATE: 04/29/2001

CASE No.# : 2001-030301

# VOLUNTARY STATEMENT

then told my grand daughter I was going back outside to move my car. As I was walking out of the Mall I ran into a Security Guard I knew and I asked him if her would follow me out of the mall, explaining to him about the incident that had just happened. I told him if the women was still there I didn't want any more trouble with her. The Security Guard followed me out to my car and this women was still there. What I didn't know was this women had pulled her car in front of mine and blocked me in. The Security Guard asked the women to please move her car but she refused, stating she had called the police and was waiting for them to arrive. I told the security guard I had to go back in the store and try to explain to my grand daughter . I did in fact lie to my grand daughter, I told her we had to wait for a tow truck to come and fix a flat tier on the car, I wouldn't dare tell my grand daughter the police were coming she would get more up set then she was already. I came back outside and went into my car and was using my cell phone when the police arrived. The female police officer came over to my car and asked me to get, out which I did. When I got out of the car this women was still screaming, but this time at the police officer telling her to tow my car and to give me a ticket. I did recall the police officer telling this women she couldn't tow my car because I had a Handicap Parking Permit. I did explain to the officer that I was very sensitive to the Handicap, because I was a Spiritual HIV counselor, Community Advocate for people who are affected with HIV, and I also do many, many hours of Community Services for the Disability and I serve on different Boards for people with HIV related sicknesses. I would never do anything to hurt anyone with a disability, I served these people for the past 22 years. When the officer told me I had scratched this women I told her to look at my nails, I didnt have any, their are cut very very short. I even told the officer I would submit to have my nails check to show that I never scratched the women. To be truthfully honest, when this women first started telling me to move my car I really thought she was kidding. You have to understand how much love I have for my grand daughter to even think I would put her in a situation such as what had just occured. I never did anything to this women other than touch her face, and I did this only to convince my grand daughter the women was only fooling. At no time did I put my head in side this women's car and bite her.

---

The facts herein contained are true and correct, and knowing that any false statement is subject to prosecution under the penalties of Connecticut State Statute 53a-157b, I have given the above statement of my own free will without threat or promise.

Signed _Patricia Denardo_
Signature of Person giving voluntary statement

Witness: _____

Supervisor _L+ R Miller_    _4/29/01_
Subscribed and Sworn to before me    Date

Page 2 of 2

ORIGINAL **COPY**    REV. 1 CS

**ARREST WARRANT APPLICATION**
JD-CR-64 Rev. 7-96
C.G.S. § 54-2a, Pr. Bk. Sec. 593, 593A, 594

STATE OF CONNECTICUT
SUPERIOR COURT

2001-030301

| FOR COURT USE ONLY |
| --- |
| Supporting Affidavits Sealed |
| ☐ YES    ☐ NO |

NAME AND RESIDENCE (Town) OF ACCUSED

| Chera Simpson | 26 Midfield Drive Waterbury, CT | COURT TO BE HELD AT (Town) | G.A. NO. |
| ACCUSED DATE OF BIRTH 05/26/1959 | APPLICATION FOR ARREST WARRANT | Waterbury | 4 |

TO: A Judge of the Superior Court

The undersigned hereby applies for a warrant for the arrest of the above-named accused on the basis of the facts set forth in the...
☒ affidavit below ...    ☐ affidavit(s) attached.

| DATE & SIGNATURE | DATE 6/25/01 | SIGNED (Prosecutorial Official) C. ____ |
| --- | --- | --- |

### AFFIDAVIT

The undersigned, being duly sworn, deposes and says:

1. That the affiant, Detective David Balnis, is a regular member of the Waterbury Police Department having over nine years of police training and experience. The affiant is currently assigned to the Criminal Investigation Bureau of the Waterbury Police Department and has conducted numerous criminal investigations that have resulted in both the arrest and conviction of those involved. The affiant has personal knowledge of the facts and circumstances hereinafter related as a result of his own investigative efforts and those of officers who have reported their findings to him.

2. That on 21 April 2001 at approximately 1840 hours, the Waterbury Police Department received a complaint of an assault that occurred within the parking area of the Brass Mill Mall located at 495 Union Street in the City of Waterbury. Officer B. Alenckis responded to 495 Union Street where she spoke with Chera Simpson DOB:05/26/1959 and Patricia Denardo DOB:03/14/1937. Simpson informed Officer Alenckis that while traveling through the Brass Mill Mall parking lot she observed Denardo improperly park her vehicle in a marked handicap parking space. Simpson continued, informing Officer Alenckis that she confronted Denardo and instructed her to move her vehicle. Simpson stated that after confronting Denardo, Denardo reached into Simpson's vehicle and scratched her left shoulder and arm. Denardo informed Officer Alenckis that she parked her vehicle in a handicap parking space and began walking her six (6) year old grand-daughter into the mall when she was confronted by Simpson. Denardo continued, stating that Simpson began yelling profanities at her, and that she reached into Simpson's car and placed her hand lightly on Simpson's face and asked her to not to use profanity in front of her grandchild. Both Simpson and Denardo agreed to respond to the Criminal Investigation Bureau of the Waterbury Police Department to provide Detectives with written statements concerning the incident.

3. That on 21 April 2001, Chera Simpson did respond to the Criminal Investigation Bureau of the Waterbury Police Department where she provided Detective Robles with a written statement concerning the aforementioned incident. Simpson stated that earlier that day she and her boyfriend, who she identified as

| DATE & SIGNATURE | DATE 05-01-2001 | SIGNED (Affiant) David Balnis #60 |
| --- | --- | --- |
| JURAT | SUBSCRIBED AND SWORN TO BEFORE ME ON (Date) 5-01-01 | SIGNED (Judge, Clerk, Comm. Sup. Ct. Notary Pub.) |

### FINDING

The foregoing Application for an arrest warrant, and affidavit(s) attached to said Application, having been submitted to and considered by the undersigned, the undersigned finds from said affidavit(s) that there is probable cause to believe that an offense has been committed and that the accused committed it and, therefore, that probable cause exists for the issuance of a warrant for the arrest of the above-named accused.

| DATE & SIGNATURE | DATE 7/6/01 | SIGNED (A Judge of the Superior Court) |
| --- | --- | --- |

COPY

ARREST WARRANT APPLICATION    STATE OF CONNECTICUT
JD-CR-64 Rev. 7-96                          SUPERIOR COURT
C.G. S. § 54-2a, Pr. Bk. Sec. 593, 593A, 594

| | | FOR COURT USE ONLY |
|---|---|---|
| | | Supporting Affidavits Sealed |
| | 2001-030301 | ☐ YES    ☐ NO |

| NAME AND RESIDENCE (Town) OF ACCUSED | | COURT TO BE HELD AT (Town) | G.A. NO. |
|---|---|---|---|
| Chera  Simpson    26 Midfield Drive  Waterbury, CT | | Waterbury | 4 |

| ACCUSED DATE OF BIRTH | |
|---|---|
| 05/26/1959 | APPLICATION FOR ARREST WARRANT |

TO: A Judge of the Superior Court

The undersigned hereby applies for a warrant for the arrest of the above-named accused on the basis of the facts set forth in the...
☒ affidavit below ...    ☐ affidavit(s) attached.

| DATE & SIGNATURE | DATE 6/25/01 | SIGNED (Prosecutorial Official) C. Seraf— |
|---|---|---|

### AFFIDAVIT

The undersigned, being duly sworn, deposes and says:

Richard Lissanderllo, were at the Brass Mill Mall in Waterbury searching for a unoccupied parking space when they observed a parked vehicle blocking the handicap entrance for wheel chairs.  Simpson stated that she approached the woman who had been driving the vehicle and informed her that she was the Chairman of the Commission for Disabilities for the City of Waterbury.  Simpson stated that the woman then asked her for identification, and that she then provided the woman with her business card that has her name and title embossed on it.  Simpson stated that the woman, without warning, reached into her vehicle grabbed her by the face and twisted her skin.  Simpson stated that this woman then bit and scratched her shoulder. Simpson stated that she and Lissandrello still had their seat belts on and that all she could do was push the woman away and roll up the vehicle's window.  Simpson stated that the woman then attempted to enter the vehicle but the vehicle's alarm activated and locked the doors.  Simpson stated that she then dialed 911 on cellular telephone and awaited police arrival.   In Simpson's original verbal statement to Officer Alenckis Simpson made no mention of Denardo biting her shoulder and did not display a bite injury.

4.  That on 25 April 2001, Chera Simpson again responded to the Criminal Investigation Bureau of the Waterbury Police Department where she provided Detective Sergeant Jannetty with a second written statement concerning the aforementioned incident.  In Simpson's second statement, Simpson added additional information that she failed to provide Detective Robles in her original written statement on 21 April. Simpson additionally stated that as Denardo was scratching and biting her, she heard the young child accompanying Denardo yelling "Stop Grandma, or your gonna get arrested.".  Simpson also added that after she called 911, Denardo walked into the mall with the child and returned a few minutes later without the child but accompanied by Mall Security Guards.

5.  That on 27 April 2001, Richard Lissandrello responded to the Waterbury Police Department with a pre-typed statement concerning the aforementioned incident which was then notarized by Patrol Lieutenant Covel.  Lissandrello wrote in his statement that on 21 April 2001 he and Simpson drove to the Brass Mill Mall

| DATE & SIGNATURE | DATE 05-01-2001 | SIGNED (Affiant) R J Bal B4lxxs 4bv |
|---|---|---|
| JURAT | SUBSCRIBED AND SWORN TO BEFORE ME ON (Date) 5-01-01 | SIGNED (Judge, Clerk, Comm. Sup. Ch, Notary Pub.) |

### FINDING

The foregoing Application for an arrest warrant, and affidavit(s) attached to said Application, having been submitted to and considered by the undersigned, the undersigned finds from said affidavit(s) that there is probable cause to believe that an offense has been committed and that the accused committed it and, therefore, that probable cause exists for the issuance of a warrant for the arrest of the above-named accused.

| DATE & SIGNATURE | DATE 7/6/01 | SIGNED (A Judge of the Superior Court) |
|---|---|---|

ARREST WARRANT APPLICATION
JD-CF-64 Rev. 7-96
C.G.S. § 54-2a, Pr. Bk. Sec. 593, 593A, 594

STATE OF CONNECTICUT
SUPERIOR COURT

2001-030301

| FOR COURT USE ONLY |
| Supporting Affidavits Sealed |
| ☐ YES    ☐ NO |

NAME AND RESIDENCE (Town) OF ACCUSED

| Chera Simpson | 26 Midfield Drive  Waterbury, CT | COURT TO BE HELD AT (Town) | G.A. NO |
| | | Waterbury | 4 |

ACCUSED DATE OF BIRTH
05/26/1959

APPLICATION FOR ARREST WARRANT

TO: A Judge of the Superior Court

The undersigned hereby applies for a warrant for the arrest of the above-named accused on the basis of the facts set forth in the...
☒ affidavit below ...   ☐ affidavit(s) attached.

| DATE & SIGNATURE | DATE 6/25/01 | SIGNED (Prosecutorial Official) C. Serafi— |

## AFFIDAVIT

The undersigned, being duly sworn, deposes and says:

to have coffee.  Lissandrello continued stating that as Simpson was parking their vehicle they observed a woman with a young child parking a vehicle in a three foot access area designated for wheelchairs. Lissandrello stated that Simpson approached the woman, rolled down her window and then identified herself as the Chairman of the Commission for Disabilities for the City of Waterbury.  Lissandrello stated that Simpson then informed the woman that the area she was parked in was reserved for wheelchairs. Lissandrello stated that the woman then asked Simpson for her identification and stated that she would also show Simpson her's.  Lissandrello stated that Simpson then provided the woman with her identification. Lissandrello stated that Simpson then turned to him and stated that the woman was acting irrational and that they should just get the woman's license plate number and let the police correct the situation.  Lissandrello stated that without warning, as Simpson was attempting to drive away, the woman came through the window of the vehicle and began assaulting Simpson by grabbing at her face and scratching her.  Lessandrello stated that as this was occurring, the young child with her was crying and yelling "Grandma stop, your going to get arrested".  Lessandrello stated that Simpson was able to get the woman out of the car and that she rolled up the window and called 911 on her cellular telephone.  Lessandrello stated that as Simpson was making the 911 call, the woman continued to attempt to enter the vehicle.  Lissandrello's statement contains no mention of Simpson being biten by Denardo.

6.    That on 29 April 2001, Patricia Denardo responded to the Criminal Investigation Bureau of the Waterbury Police Department and provided Detective Jones with a written statement concerning the aforementioned incident.  Denardo stated that on 21 April 2001 she drove her six (6) year old grand-daughter to the Brass Mill Mall so that her grad-daughter could pick out her birthday present.  Denardo stated that she is sixty-four (64) years old and suffers from multiple sclerosis.  Denardo stated that due to her handicap she is presently in possession of a State of Connecticut Handicap Parking Permit.  While in the parking area of the Mall, Denardo stated that she was unable to locate a vacant handicap parking space, so she parked in a marked off area next to a posted handicap area.  Denardo stated that as she walked her grand-daughter across the

| DATE & SIGNATURE | DATE 05-01-2001 | SIGNED (Affiant) |
| JURAT | SUBSCRIBED AND SWORN TO BEFORE ME ON (Date) 5-01-01 | SIGNED (Judge, Clerk, Comm. Sup. Ct), Notary Pub.) |

## FINDING

The foregoing Application for an arrest warrant, and affidavit(s) attached to said Application, having been submitted to and considered by the undersigned, the undersigned finds from said affidavit(s) that there is probable cause to believe that an offense has been committed and that the accused committed it and, therefore, that probable cause exists for the issuance of a warrant for the arrest of the above-named accused.

| DATE & SIGNATURE | DATE 7/6/01 | SIGNED (A Judge of the Superior Court) |

COPY

RREST WARRANT APPLICATION   **STATE OF CONNECTICUT**
CR-84 Rev. 7-96                         SUPERIOR COURT
. S. § 54-2a, Pr. Bk. Sec. 593, 593A, 594

| | FOR COURT USE ONLY |
|---|---|
| | Supporting Affidavits Sealed ☐ YES ☐ NO |

**2001-030301**

| ME AND RESIDENCE (Town) OF ACCUSED | | COURT TO BE HELD AT (Town) | G.A. NO |
|---|---|---|---|
| ʰera Simpson        26 Midfield Drive  Waterbury, CT | | Waterbury | 4 |
| ACCUSED DATE OF BIRTH 05/26/1959 | APPLICATION FOR ARREST WARRANT | | |

ᴐ: A Judge of the Superior Court

ʰe undersigned hereby applies for a warrant for the arrest of the above-named accused on the basis of the facts set forth in the...
affidavit below ...   ☐ affidavit(s) attached.

| DATE & SIGNATURE | DATE   6/25/01 | SIGNED (Prosecutorial Official)   C. Senof |
|---|---|---|

### AFFIDAVIT

ʰe undersigned, being duly sworn, deposes and says:

ʳosswalk towards the Mall, a bluish colored vehicle cut in front of them almost striking her and her grand-
ʲaughter.  Denardo stated that the female driver of the vehicle rolled her window down and began yelling at
ʲer telling her that she could not park in the area that she had parked.  Denardo stated that she then asked
ʰe female operator who she was and that the woman stated that she was the Chairman for the Commission
ᴏr Disabilities and then handed her business card.  Denardo stated that she then attempted to explain to the
ʲoman that she is handicapped and posses a valid Connecticut Handicap Parking Permit.  Denardo stated
ʰat the woman did not seem to care about her explanation and continued yelling at telling her move "the
ᴊcking car".  Denardo stated that she continued her attempts to explain to the woman why she parked in the
ʳea and the woman continued to ignore her explanation and continued to yell profanities.  Denardo stated
ʰat the woman's hysterical screaming frightened her grand-daughter who then began to cry.  Denardo stated
ʰat the woman then began threatening her stating that she was going to call the police and her vehicle towed
ʳom the Mall.  Denardo stated that when her grand-daughter heard that their vehicle was going to be towed
ⁱnd they would have no way to go home she became hysterical.  Denardo stated that she attempted to calm
ʲer grand-daughter down by telling her that the woman was only fooling and did not mean what she was
ʲaying.  Denardo stated that she then walked over to the woman's open window and placed her hand on the
ʲide of the woman's face to show her grand-daughter that nothing was wrong.  As she did this Denardo
ʲtated that she asked the woman to please tell her grand-daughter that she was kidding.  Denardo stated that
ʰe woman responded by grabbing her hand, scratching it and then yelling that she was crazy.  Denardo
ʲtated that this incident upset her grand-daughter further, so she walked her grand-daughter into the Mall
ᵉaving the woman in the parking lot.  Once in the Mall, Denardo stated that she calmed her grand-daughter
ʲown and brought her into a store where her aunt works, left her grand-daughter with the aunt so that they
ᴄould pick out a birthday present, and returned to the parking lot.  While returning to the parking lot Denardo
ʲtated that she asked a Mall Security Guard to accompany her to the parking lot and explained the earlier
ⁿcident to him.  Denardo stated that the Security Guard accompanied her to her vehicle which was now
ᴼlocked in by the woman's (Simpson's) vehicle.  Denardo stated that the Security Guard asked the woman to

| DATE & SIGNATURE | DATE   05-01-2001 | SIGNED (Affiant)   Τ   Jo Balois 460 |
|---|---|---|
| JURAT | SUBSCRIBED AND SWORN TO BEFORE ME ON (Date)   5 01-01 | SIGNED (Judge, Clerk, Comm. Sup. Crt. Notary Pub.) |

### FINDING

The foregoing Application for an arrest warrant, and affidavit(s) attached to said Application, having been submitted to and
considered by the undersigned, the undersigned finds from said affidavit(s) that there is probable cause to believe that an
offense has been committed and that the accused committed it and, therefore, that probable cause exists for the issuance of
a warrant for the arrest of the above-named accused.

| DATE & SIGNATURE | DATE   7/6/01 | SIGNED (A Judge of the Superior Court) |
|---|---|---|

ARREST WARRANT APPLICATION
D-CR-84 Rev. 7-96
C.G. S. § 54-2a, Pr. Bk. Sec. 593, 593A, 594

STATE OF CONNECTICUT
SUPERIOR COURT

2001-030301

| | FOR COURT USE ONLY |
| --- | --- |
| | Supporting Affidavits Sealed |
| | ☐ YES    ☐ NO |

| NAME AND RESIDENCE (Town) OF ACCUSED | | COURT TO BE HELD AT (Town) | G.A. NO. |
| --- | --- | --- | --- |
| Chera Simpson    26 Midfield Drive  Waterbury, CT | | Waterbury | 4 |

ACCUSED DATE OF BIRTH
05/26/1959

APPLICATION FOR ARREST WARRANT

TO: A Judge of the Superior Court

The undersigned hereby applies for a warrant for the arrest of the above-named accused on the basis of the facts set forth in the...
☒ affidavit below ...    ☐ affidavit(s) attached.

| DATE & SIGNATURE | DATE 6/25/01 | SIGNED (Prosecutorial Official)  C. Seuf |
| --- | --- | --- |

## AFFIDAVIT

The undersigned, being duly sworn, deposes and says:

move her vehicle and that the woman refused stating that she had called the police and was awaiting their arrival.  Denardo stated that she then went back into the mall and retrieved her grand-daughter.  Not wanting to upset her daughter any further, Denardo stated that she told her daughter that their car had a flat tire and that a tow truck was going to come and fix it.  After returning to the parking lot Denardo stated that she spoke with a police officer who informed her that Simpson had stated that she had scratched and bit her.  Denardo stated that she showed the Officer her fingernails which were trimmed to the finger.  Denardo stated that she never had any contact with Simpson other than lightly touching her face, and that she would never intentionally place her grand-daughter in such a situation.

7.    That based on the aforementioned facts, statement and circumstances, the affiant believes that probable cause has been established to request that an arrest warrant be granted for CHERA SIMPSON DOB:05/26/1959 charging her with  BREACH OF PEACE in violation of Connecticut General Statute 53a-181.

| DATE & SIGNATURE | DATE  05-01-2001 | SIGNED (Affiant)  Bd BAlvis 400 |
| --- | --- | --- |
| JURAT | SUBSCRIBED AND SWORN TO BEFORE ME ON (Date)  5-01-01 | SIGNED (Judge, Clerk, Comm. Sup. Ct., Notary Pub.) |

## FINDING

The foregoing Application for an arrest warrant, and affidavit(s) attached to said Application, having been submitted to and considered by the undersigned, the undersigned finds from said affidavit(s) that there is probable cause to believe that an offense has been committed and that the accused committed it and, therefore, that probable cause exists for the issuance of a warrant for the arrest of the above-named accused.

| DATE & SIGNATURE | DATE  7/6/01 | SIGNED (A Judge of the Superior Court) |
| --- | --- | --- |

COPY

**ARREST WARRANT APPLICATION**
JD-CR-64 Rev. 7-96
C.G. S. § 54-2a, Pr. Bk. Sec. 593, 593A, 594

**STATE OF CONNECTICUT**
SUPERIOR COURT

2001-030301

| FOR COURT USE ONLY |
| --- |
| Supporting Affidavits Sealed |
| ☐ YES    ☐ NO |

| NAME AND RESIDENCE (Town) OF ACCUSED | | COURT TO BE HELD AT (Town) | G.A. NO. |
| --- | --- | --- | --- |
| Patricia Denardo          64 Dalton Street Oakville, CT | | Waterbury | 4 |
| ACCUSED DATE OF BIRTH 03/14/1937 | **APPLICATION FOR ARREST WARRANT** | | |

TO: A Judge of the Superior Court

The undersigned hereby applies for a warrant for the arrest of the above-named accused on the basis of the facts set forth in the...
☒ affidavit below ...    ☐ affidavit(s) attached.

| DATE & SIGNATURE | DATE 1/25/01 | SIGNED (Prosecutorial Official) C. Leury |
| --- | --- | --- |

**AFFIDAVIT**

The undersigned, being duly sworn, deposes and says:

1. That the affiant, Detective David Balnis, is a regular member of the Waterbury Police Department having over nine years of police training and experience. The affiant is currently assigned to the Criminal Investigation Bureau of the Waterbury Police Department and has conducted numerous criminal investigations that have resulted in both the arrest and conviction of those involved. The affiant has personal knowledge of the facts and circumstances hereinafter related as a result of his own investigative efforts and those of officers who have reported their findings to him.

2. That on 21 April 2001 at approximately 1840 hours, the Waterbury Police Department received a complaint of an assault that occurred within the parking area of the Brass Mill Mall located at 495 Union Street in the City of Waterbury. Officer B. Alenckis responded to 495 Union Street where she spoke with Chera Simpson DOB:05/26/1959 and Patricia Denardo DOB:03/14/1937. Simpson informed Officer Alenckis that while traveling through the Brass Mill Mall parking lot she observed Denardo improperly park her vehicle in marked handicap parking space. Simpson continued, informing Officer Alenckis that she confronted Denardo and instructed her to move her vehicle. Simpson stated that after confronting Denardo, Denardo reached into Simpson's vehicle and scratched her left shoulder and arm. Denardo informed Officer Alenckis that she parked her vehicle in a handicap parking space and began walking her six (6) year old grand-daughter into the mall when she was confronted by Simpson. Denardo continued, stating that Simpson began yelling profanities at her, and that she reached into Simpson's car and placed her hand lightly on Simpson's face and asked her to not to use profanity in front of her grandchild. Both Simpson and Denardo agreed to respond to the Criminal Investigation Bureau of the Waterbury Police Department to provide Detectives with written statements concerning the incident.

3. That on 21 April 2001, Chera Simpson did respond to the Criminal Investigation Bureau of the Waterbury Police Department where she provided Detective Robles with a written statement concerning the aforementioned incident. Simpson stated that earlier that day she and her boyfriend, who she identified as

| DATE & SIGNATURE | DATE 05-01-2001 | SIGNED (Affiant) David Balnis 466 |
| --- | --- | --- |
| JURAT | SUBSCRIBED AND SWORN TO BEFORE ME ON (Date) 5-01-01 | SIGNED (Judge, Clerk, Comm. Sup. Ct., Notary Pub.) |

**FINDING**

The foregoing Application for an arrest warrant, and affidavit(s) attached to said Application, having been submitted to and considered by the undersigned, the undersigned finds from said affidavit(s) that there is probable cause to believe that an offense has been committed and that the accused committed it and, therefore, that probable cause exists for the issuance of a warrant for the arrest of the above-named accused.

| DATE & SIGNATURE | DATE 7/6/01 | SIGNED (A Judge of the Superior Court) |
| --- | --- | --- |

CERT. COPY

ARREST WARRANT APPLICATION
JD-CR-64 Rev. 7-96
C.G. S. § 54-2a, Pr. Bk. Sec. 593, 593A, 594

STATE OF CONNECTICUT
SUPERIOR COURT

| FOR COURT USE ONLY |
| --- |
| Supporting Affidavits Sealed |
| ☐ YES    ☐ NO |

2001-030301

NAME AND RESIDENCE (Town) OF ACCUSED

Patricia Denardo                    64 Dalton Street  Oakville, CT

| | | |
| --- | --- | --- |
| ACCUSED DATE OF BIRTH 03/14/1937 | COURT TO BE HELD AT (Town) Waterbury | G.A. NO 4 |

APPLICATION FOR ARREST WARRANT

TO: A Judge of the Superior Court

The undersigned hereby applies for a warrant for the arrest of the above-named accused on the basis of the facts set forth in the...
☒ affidavit below ...   ☐ affidavit(s) attached.

| DATE & SIGNATURE | DATE  6/25/01 | SIGNED (Prosecutorial Official)  C. Serafin |
| --- | --- | --- |

### AFFIDAVIT

The undersigned, being duly sworn, deposes and says:

Richard Lissanderllo, were at the Brass Mill Mall in Waterbury searching for a unoccupied parking space when they observed a parked vehicle blocking the handicap entrance for wheel chairs.  Simpson stated that she approached the woman who had been driving the vehicle and informed her that she was the Chairman of the Commission for Disabilities for the City of Waterbury.  Simpson stated that the woman then asked her for identification, and that she then provided the woman with her business card that has her name and title embossed on it.  Simpson stated that the woman, without warning, reached into her vehicle grabbed her by the face and twisted her skin.  Simpson stated that this woman then bit and scratched her shoulder.  Simpson stated that she and Lissandrello still had their seat belts on and that all she could do was push the woman away and roll up the vehicle's window.  Simpson stated that the woman then attempted to enter the vehicle but the vehicle's alarm activated and locked the doors.  Simpson stated that she then dialed 911 on cellular telephone and awaited police arrival.   In Simpson's original verbal statement to Officer Alenckis Simpson made no mention of Denardo biting her shoulder and did not display a bite injury.

4.  That on 25 April 2001, Chera Simpson again responded to the Criminal Investigation Bureau of the Waterbury Police Department where she provided Detective Sergeant Jannetty with a second written statement concerning the aforementioned incident.  In Simpson's second statement, Simpson added additional information that she failed to provide Detective Robles in her original written statement on 21 April.  Simpson additionally stated that as Denardo was scratching and biting her, she heard the young child accompanying Denardo yelling "Stop Grandma, or your gonna get arrested.".  Simpson also added that after she called 911, Denardo walked into the mall with the child and returned a few minutes later without the child but accompanied by Mall Security Guards.

5.  That on 27 April 2001, Richard Lissandrello responded to the Waterbury Police Department with a pre-typed statement concerning the aforementioned incident which was then notarized by Patrol Lieutenant Covel.  Lissandrello wrote in his statement that on 21 April 2001 he and Simpson drove to the Brass Mill Mall

| DATE & SIGNATURE  JURAT | DATE  C5-01-2001  SUBSCRIBED AND SWORN TO BEFORE ME ON (Date)  5-01-01 | SIGNED (Affiant)  W Balnis 460 |
| --- | --- | --- |
| | | SIGNED (Judge, Clerk, Comm. Sup. Ct., Notary Pub.) |

### FINDING

The foregoing Application for an arrest warrant, and affidavit(s) attached to said Application, having been submitted to and considered by the undersigned, the undersigned finds from said affidavit(s) that there is probable cause to believe that an offense has been committed and that the accused committed it and, therefore, that probable cause exists for the issuance of a warrant for the arrest of the above-named accused.

| DATE & SIGNATURE | DATE  7/6/01 | SIGNED (A Judge of the Superior Court) |
| --- | --- | --- |

ORIGINAL COPY

ARREST WARRANT APPLICATION
JD-CR-64 Rev. 7-96
C.G. S. § 54-2a. Pr. Bk. Sec. 593, 593A, 594

STATE OF CONNECTICUT
SUPERIOR COURT

2001-030301

| FOR COURT USE ONLY |
| Supporting Affidavits Sealed |
| ☐ YES    ☐ NO |

NAME AND RESIDENCE (Town) OF ACCUSED

Patricia  Denardo          64 Dalton Street  Oakville, CT

| COURT TO BE HELD AT (Town) | G.A. NO. |
| Waterbury | 4 |

ACCUSED DATE OF BIRTH
03/14/1937

APPLICATION FOR ARREST WARRANT

TO: A Judge of the Superior Court

The undersigned hereby applies for a warrant for the arrest of the above-named accused on the basis of the facts set forth in the...

☒ affidavit below ...    ☐ affidavit(s) attached.

| DATE & SIGNATURE | DATE  6/x/01 | SIGNED (Prosecutorial Official)  C. Serafi... |

### AFFIDAVIT

The undersigned, being duly sworn, deposes and says:

to have coffee.  Lissandrello continued stating that as Simpson was parking their vehicle they observed a woman with a young child parking a vehicle in a three foot access area designated for wheelchairs. Lissandrello stated that Simpson approached the woman, rolled down her window and then identified herself as the Chairman of the Commission for Disabilities for the City of Waterbury.  Lissandrello stated that Simpson then informed the woman that the area she was parked in was reserved for wheelchairs. Lissandrello stated that the woman then asked Simpson for her identification and stated that she would also show Simpson her's.  Lissandrello stated that Simpson then provided the woman with her identification. Lissandrello stated that Simpson then turned to him and stated that the woman was acting irrational and that they should just get the woman's license plate number and let the police correct the situation.  Lissandrello stated that without warning, as Simpson was attempting to drive away, the woman came through the window of the vehicle and began assaulting Simpson by grabbing at her face and scratching her.  Lissandrello stated that as this was occurring, the young child with the woman was crying and yelling "Grandma stop, your going to get arrested".  Lissandrello stated that Simpson was able to get the woman out of the car and that she rolled up the window and called 911 on her cellular telephone.  Lissandrello stated that as Simpson was making the 911 call, the woman continued to attempt to enter the vehicle.  Lissandrello's statement contains no mention of Simpson being biten by Denardo.

6.    That on 29 April 2001, Patricia Denardo responded to the Criminal Investigation Bureau of the Waterbury Police Department and provided Detective Jones with a written statement concerning the aforementioned incident.  Denardo stated that on 21 April 2001 she drove her six (6) year old grand-daughter to the Brass Mill Mall so that her grad-daughter could pick out her birthday present.  Denardo stated that she is sixty-four (64) years old and suffers from multiple sclerosis.  Denardo stated that due to her handicap she is presently in possession of a State of Connecticut Handicap Parking Permit.  While in the parking area of the Mall, Denardo stated that she was unable to locate a vacant handicap parking space, so she parked in a marked off area next to a posted handicap area.  Denardo stated that as she walked her grand-daughter across the

| DATE & SIGNATURE | DATE  05-01-2001 | SIGNED (Affiant)  ... Bol Balas 460 |
| JURAT | SUBSCRIBED AND SWORN TO BEFORE ME ON (Date)  5-01-01 | SIGNED (Judge, Clerk, Comm. Sup. Ct., Notary Pub.) |

### FINDING

The foregoing Application for an arrest warrant, and affidavit(s) attached to said Application, having been submitted to and considered by the undersigned, the undersigned finds from said affidavit(s) that there is probable cause to believe that an offense has been committed and that the accused committed it and, therefore, that probable cause exists for the issuance of a warrant for the arrest of the above-named accused.

| DATE & SIGNATURE | DATE  7/6/01 | SIGNED (A Judge of the Superior Court) |

OF ... COPY

ARREST WARRANT APPLICATION
JD-CR-64 Rev. 7-96
C.G. S. § 54-2a, Pr. Bk. Sec. 593, 593A, 594

STATE OF CONNECTICUT
SUPERIOR COURT

2001-030301

| FOR COURT USE ONLY |
|---|
| Supporting Affidavit Sealed |
| ☐ YES    ☐ NO |

NAME AND RESIDENCE (Town) OF ACCUSED

Patricia  Denardo          64 Dalton Street  Oakville, CT

| COURT TO BE HELD AT (Town) | G.A. NO |
|---|---|
| Waterbury | 4 |

ACCUSED DATE OF BIRTH
03/14/1937

APPLICATION FOR ARREST WARRANT

TO: A Judge of the Superior Court

The undersigned hereby applies for a warrant for the arrest of the above-named accused on the basis of the facts set forth in the...
☒ affidavit below ...    ☐ affidavit(s) attached.

| DATE & SIGNATURE | DATE  6/25/01 | SIGNED (Prosecutorial Official)  C. Seri |
|---|---|---|

## AFFIDAVIT

The undersigned, being duly sworn, deposes and says:

crosswalk towards the Mall, a bluish colored vehicle cut in front of them almost striking her and her grand-daughter. Denardo stated that the female driver of the vehicle rolled her window down and began yelling at her telling her that she could not park in the area that she had parked. Denardo stated that she then asked the female operator who she was and that the woman stated that she was the Chairman for the Commission for Disabilities and then handed her business card. Denardo stated that she then attempted to explain to the woman that she is handicapped and posses a valid Connecticut Handicap Parking Permit. Denardo stated that the woman did not seem to care about her explanation and continued yelling at her telling her move "the fucking car". Denardo stated that she continued her attempts to explain to the woman why she parked in the area and the woman continued to ignore her explanation and continued to yell profanities. Denardo stated that the woman's hysterical screaming frightened her grand-daughter who then began to cry. Denardo stated that the woman then began threatening her stating that she was going to call the police and her vehicle towed from the Mall. Denardo stated that when her grand-daughter heard that their vehicle was going to be towed and they would have no way to go home she became hysterical. Denardo stated that she attempted to calm her grand-daughter down by telling her that the woman was only fooling and did not mean what she was saying. Denardo stated that she then walked over to the woman's open window and placed her hand on the side of the woman's face to show her grand-daughter that nothing was wrong. As she did this Denardo stated that she asked the woman to please tell her grand-daughter that she was kidding. Denardo stated that the woman responded by grabbing her hand, scratching it and then yelling that she was crazy. Denardo stated that this incident upset her grand-daughter further, so she walked her grand-daughter into the Mall leaving the woman in the parking lot. Once in the Mall, Denardo stated that she calmed her grand-daughter down and brought her into a store where her aunt works, left her grand-daughter with the aunt so that they could pick out a birthday present, and returned to the parking lot. While returning to the parking lot Denardo stated that she asked a Mall Security Guard to accompany her to the parking lot and explained the earlier incident to him. Denardo stated that the Security Guard accompanied her to her vehicle which was now blocked in by the woman's (Simpson's) vehicle. Denardo stated that the Security Guard asked the woman to

| DATE & SIGNATURE | DATE  05-01-2001 | SIGNED (Affiant)  HRJ Bol Balnis 460 |
|---|---|---|
| JURAT | SUBSCRIBED AND SWORN TO BEFORE ME ON (Date)  5-01-01 | SIGNED (A Judge, Clerk, Comm. Sup. Ct., Notary Pub.) |

## FINDING

The foregoing Application for an arrest warrant, and affidavit(s) attached to said Application, having been submitted to and considered by the undersigned, the undersigned finds from said affidavit(s) that there is probable cause to believe that an offense has been committed and that the accused committed it and, therefore, that probable cause exists for the issuance of a warrant for the arrest of the above-named accused.

| DATE & SIGNATURE | DATE  7/6/01 | SIGNED (A Judge of the Superior Court) |
|---|---|---|

CERTIFIED COPY

**ARREST WARRANT APPLICATION**    STATE OF CONNECTICUT
JD-CR-64 Rev. 7-96                         SUPERIOR COURT
C.G.S. § 54-2a, Pr. Bk. Sec. 593, 593A, 594

2001-030301

| FOR COURT USE ONLY |
| --- |
| Supporting Affidavits Sealed |
| ☐ YES    ☐ NO |

NAME AND RESIDENCE (Town) OF ACCUSED

| Patricia  Denardo | 64 Dalton Street  Oakville, CT | COURT TO BE HELD AT (Town) | G.A. NO. |
| --- | --- | --- | --- |
| ACCUSED DATE OF BIRTH 03/14/1937 | **APPLICATION FOR ARREST WARRANT** | Waterbury | 4 |

TO: A Judge of the Superior Court

The undersigned hereby applies for a warrant for the arrest of the above-named accused on the basis of the facts set forth in the...
☒ affidavit below ...    ☐ affidavit(s) attached.

| DATE & SIGNATURE | DATE 6/25/01 | SIGNED (Prosecutorial Official) C. Seri... |
| --- | --- | --- |

**AFFIDAVIT**

The undersigned, being duly sworn, deposes and says:

move her vehicle and that the woman refused stating that she had called the police and was awaiting their arrival.  Denardo stated that she then went back into the mall and retrieved her grand-daughter.  Not wanting to upset her daughter any further, Denardo stated that she told her daughter that their car had a flat tire and that a tow truck was going to come and fix it.  After returning to the parking lot Denardo stated that she spoke with a police officer who informed her that Simpson had stated that she had scratched and bit her.  Denardo stated that she showed the Officer her fingernails which were trimmed to the finger.  Denardo stated that she never had any contact with Simpson other than lightly touching her face, and that she would never intentionally place her grand-daughter in such a situation.

7.    That based on the aforementioned facts, statement and circumstances, the affiant believes that probable cause has been established to request that an arrest warrant be granted for PATRICIA DENARDO DOB:03/14/1937 charging her with  BREACH OF PEACE in violation of Connecticut General Statute 53a-181.

| DATE & SIGNATURE | DATE 05-01-2001 | SIGNED (Affiant) R. Da BAINIS 460 |
| --- | --- | --- |
| JURAT | SUBSCRIBED AND SWORN TO BEFORE ME ON (Date) 5-01-01 | SIGNED (Judge, Clerk, Clerk, Supr ct, Notary Pub) |

**FINDING**

The foregoing Application for an arrest warrant, and affidavit(s) attached to said Application, having been submitted to and considered by the undersigned, the undersigned finds from said affidavit(s) that there is probable cause to believe that an offense has been committed and that the accused committed it and, therefore, that probable cause exists for the issuance of a warrant for the arrest of the above-named accused.

| DATE & SIGNATURE | DATE 7/6/01 | SIGNED (A Judge of the Superior Court) |
| --- | --- | --- |

COPY

**WARS**

# INCIDENT AND OFFENSE REPORT

## WATERBURY POLICE DEPARTMENT

P. 1 of 2

| 2. FILE NUMBER | 3. STATUS | 4. OFF. I.D. | 5. DATE OPENED | 6. DATE CLEARED | 7. INCIDENT OR OFFENSE | 1. COMPLAINT NUMBER |
|---|---|---|---|---|---|---|
| | 1 | 536 | 04/21/01 | 7/10/01 | Assault | 01-3030l |

| 8. MAJ. CO. | 9. NAME OF PLACE, BUSINESS OR FIRM | 10. ADDRESS OF OCCURENCE |
|---|---|---|
| 04E | Brass Mill Mall | 495 Union St |

| 11. LOC. CO. | 12. DAY OF WK. | 13. DATE OF OCCURENCE | 14. TIME | 15. WEATHER | 16. OBJECT OF ATTACK |
|---|---|---|---|---|---|
| SA | 4/21/01 | 1840 | C | white female |

| 17. WEAP., TOOL, MEANS OF ATTACK OR ENTRY | 18. POINT OF ENTRY | 19. METHOD OF ATTACK |
|---|---|---|
| Physical | Other | Physical |

| VICTIM: 20. AGE | 21. SEX | 22. RACE | 23. VICTIM'S NAME | | | 24. VICTIM'S ADDRESS |
|---|---|---|---|---|---|---|
| 30 | F | W | LAST Simpson | FIRST Chera | M. | 26 midfield Dr U17 |
| | | | LAST | FIRST | M. | |
| | | | LAST | FIRST | M. | |

| 25. COMPLAINANT'S NAME | | | 26. COMPLAINANT'S ADDRESS | 27. PHONE |
|---|---|---|---|---|
| LAST Simpson | FIRST Chera | M. | 26 Midfield Dr U17 | 754 8473 |

| 28. DESCRIPTION OF PLACE | 29. NATURE OF LARCENY |
|---|---|
| | |

| 30. EST. VALUE OR TYPE OF STOL. PROP. | CURRENCY | JEWELRY | FUR/CLOTH. | OFFICE EQUIP. | TV/RADIO | FIREARM | MISC. | TOTAL |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

| 31. OTHER OFFICERS AT SCENE | 32. WITNESSES: | | | 33. ADDRESS | 34. PHONE |
|---|---|---|---|---|---|
| Det Deal | LAST | FIRST | M. | | |
| | LAST | FIRST | M. | | |
| | LAST | FIRST | M. | | |
| | LAST | FIRST | M. | | |

| 35. PERSONS ARRESTED – NAME | | | 36. ADDRESS | 37. CHARGE |
|---|---|---|---|---|
| LAST Simpson | FIRST Chera | M. | 26 Midfield Dr. A17 Waterbury | BOP |
| LAST Arnoldo | FIRST Patricia | M. | 101 Dalton St. Oakville, CT | BOP |
| LAST | FIRST | M. | | |
| LAST | FIRST | M. | | |
| LAST | FIRST | M. | | |
| LAST | FIRST | M. | | |
| LAST | FIRST | M. | | |

| 38. OFFICER REPORTING   SIGNATURE | 39. POST/BEAT | 40. DATE OF REPORT | 41. COMP. OPER. |
|---|---|---|---|
| Ptl. B. Galenckis | Bravo 3 | 4/21/01 | |

**42. NARRATIVE:**

**DETAILS OF OFFENSE:** Describe important information as to why or how the incident occured; physical evidence; include serial numbers of property if available; vehicles used if any, any suspects, etc.

On 4-21-01 at approximately 1840 hours this unit was dispatched to 495 Union St on an assault complaint

Upon arrival spoke with complainant Chera Simpson. Ms. Simpson stated that while in the mall lot she observed someone improperly parked in a handicap space at which time she advised the accused, Patricia Denardo, D.O.B. 3-14-32, that she needed to move her vehicle. The complainant stated that Denardo reached inside her vehicle and grabbed the left side of her face and scratched her left shoulder and arm, leaving visible marks.

Ms. Denardo stated that Simpson was yelling profanity at her and that she reached in and lightly touched the side of her face and asked her not to swear in front of her granddaughters.

Detective Deal was on scene and stated that the D.B. was available to take statements from both parties at this time. Both parties agreed to make a statement with the D.B., concerning this incident. The complainant also requested photos to be taken of her injuries to ensure a more solid case against the accused. Both parties were released to follow up with the D.B. (continued)

**43. FOR FURTHER INVESTIGATION:**

DETECTIVE ☒    YOUTH ☐    V&I ☐    OTHER: EXPLAIN ☐

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE

**44. SUPERVISOR APPROVING**    **45. DATE**

Lt. J. Clay    04/21/01

WARS

# INCIDENT AND OFFENSE REPORT

## WATERBURY POLICE DEPARTMENT

| | | | | | | 1. COMPLAINT NUMBER |
|---|---|---|---|---|---|---|
| | | | | | | |

| 2. FILE NUMBER | 3. STATUS | 4. OFF. I.D. | 5 DATE OPENED | 6. DATE CLEARED | 7. INCIDENT OR OFFENSE |
|---|---|---|---|---|---|
| | | | / / | / / | |

| 8. MAJ. CO. | 9. NAME OF PLACE, BUSINESS OR FIRM | | 10. ADDRESS OF OCCURENCE |
|---|---|---|---|
| | | | |

| 11. LOC. CO. | 12. DAY OF WK. | 13. DATE OF OCCURENCE | 14. TIME | 15. WEATHER | 16. OBJECT OF ATTACK |
|---|---|---|---|---|---|
| | | / / | | | |

| 17. WEAP., TOOL, MEANS OF ATTACK OR ENTRY | 18. POINT OF ENTRY | 19. METHOD OF ATTACK |
|---|---|---|
| | | |

### VICTIM:

| 20. AGE | 21. SEX | 22. RACE | 23. VICTIM'S NAME | | | 24. VICTIM'S ADDRESS |
|---|---|---|---|---|---|---|
| | | | LAST | FIRST | M. | |
| | | | LAST | FIRST | M. | |
| | | | LAST | FIRST | M. | |

| 25. COMPLAINANT'S NAME | | | 26. COMPLAINANT'S ADDRESS | 27. PHONE |
|---|---|---|---|---|
| LAST | FIRST | M. | | |

| 28. DESCRIPTION OF PLACE | 29. NATURE OF LARCENY |
|---|---|
| | |

| 30. EST. VALUE OR TYPE OF STOL. PROP. | CURRENCY | JEWELRY | FUR/CLOTH. | OFFICE EQUIP. | TV/RADIO | FIREARM | MISC. | TOTAL |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

| 31. OTHER OFFICERS AT SCENE | 32. WITNESSES: | | | 33. ADDRESS | 34. PHONE |
|---|---|---|---|---|---|
| | LAST | FIRST | M. | | |
| | LAST | FIRST | M. | | |
| | LAST | FIRST | M. | | |
| | LAST | FIRST | M. | | |

| 35. PERSONS ARRESTED – NAME | | | 36. ADDRESS | 37. CHARGE |
|---|---|---|---|---|
| LAST | FIRST | M. | | |
| LAST | FIRST | M. | | |
| LAST | FIRST | M. | | |
| LAST | FIRST | M. | | |
| LAST | FIRST | M. | | |
| LAST | FIRST | M. | | |
| LAST | FIRST | M. | | |

| 38. OFFICER REPORTING    SIGNATURE | 39. POST/BEAT | 40. DATE OF REPORT | 41. COMP. OPER. |
|---|---|---|---|
| | | / / | |

42. NARRATIVE:

**DETAILS OF OFFENSE:** Describe important information as to why or how the incident occured; physical evidence; include serial numbers of property if available; vehicles used if any, any suspects, etc.

On 4-21-01 at approximately 2130 hours the complainant called this officer in to HQ to observe scratches to the left rear door of her vehicle, a 95 Gran Am bearing CT Reg EN·746, which she believed were done by the accused during the incident. This officer did not see the scratches at the original scene.

43. FOR FURTHER INVESTIGATION:

DETECTIVE ☐    YOUTH ☐    V & I ☐    OTHER: EXPLAIN ☐

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE

44. SUPERVISOR APPROVING

Lt. J. Clary

45. DATE

04/21/01