```
NO. CR-01-036-883
* * * * * * * * * * * * *:  STATE OF CONNECTICUT

STATE OF CONNECTICUT       :  SUPERIOR COURT

VERSUS                     :  JUDICIAL DISTRICT OF WATERBURY

CHERA A. SIMPSON           :  SEPTEMBER 10, 2001

* * * * * * * * * * * * *:
```

B E F O R E :

      THE HONORABLE RICHARD A. DAMIANI, JUDGE


A P P E A R A N C E S :

      CORRINE KLATT, ESQUIRE
      ASSISTANT STATE'S ATTORNEY

      LOUIS AVITABILE, ESQUIRE
      ATTORNEY FOR THE DEFENDANT


                                            JACQUELINE SAGLIANO
                                        COURT RECORDING MONITOR

1  THE COURT: Who do we have now?

2  MS. KLATT: Your Honor, we have two matters.

3  Actually, it's 1 on the jury list, represented by

4  Mr. Avitabile, that's Chera Simpson, she's number 1.

5  There's also a Patricia Denardo, she's number 28.

6  Patricia Denardo? She's here.

7  THE COURT: Patricia Denardo, breach of the

8  peace. Where's Ms. Simpson?

9  MR. AVITABILE: She's sick, your Honor, very

10 sick. She hasn't eaten in four days, she can't

11 because she needs an operation.

12 MS. KLATT: If the Court reviews the warrant

13 affidavit as to each, this is your classic situation

14 that just went progressively downhill, both women

15 are arrested and charged. One of the individuals

16 pulls into a handicapped parking spot with a young

17 child and has a valid handicapped sticker, the other

18 individual takes it upon herself to tell her that

19 that's not appropriate and the incident just

20 snowballed.

21 THE COURT: You're involved with the City of

22 Waterbury, am I right, with handicapped?

23 MR. AVITABILE: No, the other one is.

24 MS. KLATT: It's the other one.

25 The incident snowballed into absolutely -- in

26 the State's position, irrational proportions. I'm

27 not going to waste the State's time in prosecuting

either case.  These two individuals want to pursue these matters in the civil courts, they can hire their own counsel and pursue each other to their own ultimate happiness.  But, I, as a State official, cannot see wasting the State's time in prosecuting the matter.  We would either have to prosecute both or nolle both.  It was just, in my position, a silly incident that got out of hand.  If both individuals, both individuals, let me emphasize, were acting like adults and acting in an appropriate fashion, neither of them would have been arrested, and on that basis, I'm going to enter nolles on both.

THE COURT:  Now, you represent Ms. Simpson.

MS. KLATT:  And this is Ms. Denardo.

THE COURT:  Right.  What do you want to say? Anything?

MR. AVITABILE:  We would object to the procedure, your Honor, but I don't think we can stop a nolle.

THE COURT:  Well, you're going to nolle it, not for lack of a witness, am I right?

MS. KLATT:  Yes.

THE COURT:  Okay.  Therefore, Mr. Avitabile, you object to a nolle, the State's not going to pursue it, it's not being made pursuant to Statute, the charge against Ms. Simpson is dismissed.

MR. AVITABILE:  Thank you, your Honor.

1       THE COURT:  Now, Ms. Denardo, what's good for
2   one is good for the other, the case against you is
3   dismissed.  Whatever civil remedies you may feel you
4   have against each other, that's entirely up to you.
5   As far as this case is concerned, it's been
6   dismissed as to both of you today, automatically
7   it's erased from both your records as of today.
8   Okay?
9       MS. DENARDO:  Thank you.
10      THE COURT:  Good luck.
11  (Whereupon, this matter was concluded.)

```
NO. CR-01-0301883
* * * * * * * * * * * *:  STATE OF CONNECTICUT

STATE OF CONNECTICUT     :  SUPERIOR COURT

VERSUS                   :  JUDICIAL DISTRICT OF WATERBURY

CHERA A. SIMPSON         :  SEPTEMBER 10, 2001

* * * * * * * * * * * *:
```

C E R T I F I C A T I O N

This is to certify that I, Jacqueline Sagliano, certify that the foregoing is a true and accurate transcript of the electronic recording taken with reference to the above-entitled matter on September 10, 2001 before THE HONORABLE RICHARD A. DAMIANI.

Dated at Waterbury, Connecticut, on this 18th day of March 2003.

*Jacqueline Sagliano*
JACQUELINE SAGLIANO
COURT RECORDING MONITOR

Chera Ann Simpson
26 Midfield Dr., Apt. #17
Waterbury, CT 06705
(203) 754-8475
E-Mail Address: CherAPaS@sbcglobal.net

RECEIVED
JUN 28 2001
OFFICE SERVICE
WATERBURY, CT

June 23, 2001

Superintendent Edward Flaherty
Waterbury Police Department
255 East Main Street
Waterbury, CT 06702

RE: Incident of April 21, 2001

Dear Superintendent Flaherty:

    This letter is notification of my filing a formal complaint with your police department regarding an incident which took place of April 21, 2001. A friend and I had driven into the Brass Mill Mall to have a cup of coffee at the Coffee Beanery. While parking my car I noticed a woman get out of a car parked in between two handicapped parking spaces which were the three foot access areas designated for a wheelchair. I rolled down my window and identified myself by name and as the Chairman for the Commission for Disabilities for the City of Waterbury and nicely informed her that those areas were not for a vehicle but for a wheelchair to exit their vehicle and could she extend that courtesy to those in wheelchairs. She then said "show me your identification and I'll do you one better". I then handed hear a business card identifying myself as a Commissioner and she quickly showed some sort of AIDS card. She was acting very irrational so I said to my friend "lets just get her license plate and let the police handle it. As I was writing down the license plate neither myself nor my friend noticed that she ran after my car and next thing I knew she was assaulting me through my window. She grabbed my face, scratched me and bit me. Since I was seat belted in a car it was difficult to get her out of the window and when I was able too I rolled up the window and called 911 from my cell phone as she was still banging on my car and trying to get in.

    The woman then disappeared into the mall. There was a small child with her yelling "Grandma stop or your going to get arrested". The woman came out shortly after with several security guards. A woman officer then arrived. The woman refused to let the Officer speak with the child who had witnessed the whole incident. I believe her name was Officer Alenkis or something of that nature. She informed the woman that she was being placed under arrest for assault. The woman said I had sworn at her which I had not done and then the Officer said to the woman "regardless you had no right to assault her in her vehicle." Just as the officer was placing her under arrest a black sedan pulled up and motioned for the Officer. They spoke for quite a while and then the Officer came back and asked me and my friend to go to the police station and that a Detective would be waiting to take our statement. I found out the next day, the man in the black sedan was Detective Deal of your department. We went to the police station and were

escorted in the detective bureau. I asked if the woman was arrested and the Detective told me not to ask any questions he was simply there to take me report. I then asked him to take my witnesses statement and he refused saying my witness was biased. I then went to the emergency room for treatment of my injuries. The next day I complained to Lt. O'Leary who told me he would handle everything and Detective Deal was off the case. Lt O'Leary then started telling me what a wonderful person this woman, etc. I then insisted he take my witnesses statement and he said he would but then never did. He told me to have my witness write his own statement and drop it off to him which my witness did. I was then told that this woman was filing charges against me for breach of the peace and that a warrant would be filed against her for assault. I was told by Lt. O'Leary that a warrant was much better than an on scene arrest. I then found out the warrant on her was only for breach of the peace regardless of the fact that she assaulted me and I have had to go through numerous treatments for this including six months of hepatitis vaccinations and advised to have preventative AIDS treatment which I was not able to do due to my own disability of not having a stomach and the medication was not available by I.V.

The AIDS issue came up because she showed me an AIDS card when she asked for my identification and then told me "I'll do you one better" and then told the police she was a AIDS volunteer. I later found out she is a paid employee of a Red Cross AIDS foundation and many of their workers and volunteers suffer from AIDS although they, of course, could not tell me if she did. She also gave this AIDS card to the police and it lists an organization of AIDS patients helping AIDS patients but did not list her name or anyone's name on the card for that matter. I still do not know if this woman has AIDS or not. I did agree after speaking with Inspector Maia and my attorney to drop the charges if she had an AIDS test and she agreed but never produced same, therefore I have asked Inspector Maia to proceed with the arrest warrants even if it means I am arrested without cause because at this point I have had to have all my treatments regardless and she definitely did not hold up her end of the agreement. I also feel that on principal alone I must clear my name in a Court of Law since I know I did nothing wrong and the police certainly were not willing to hear much of what either I or my witness had to say. What I don't understand is how a simple assault turned into such a major ordeal and why she was not arrested immediately and why with a witness present I would be facing an arrest for something I did not do. I also do not understand why the Officer was placing her under arrest and then after Lt. Deal showing up and talking to her the whole scenario changed.

I would like to sit down with you at your earliest convenience to discuss this matter as I feel I have been unfairly treated in this matter and falsely accused of something I certainly did not do. I also do not understand why Lt. O'Leary kept telling me what a wonderful woman this person is and he said I had his word that she did not have AIDS and he could assure me of this.. How would he even know that? When I asked him this he said he had called her friends and fellow volunteers. I cannot imagine a Lt. with many important things to do taking the time to do this when he certainly did not take the time to call my friends and fellow Commissioners to see what kind of person I am. Why would he even care about this woman. I am also concerned that this woman's charge is only for breach of the peace when she obviously assaulted me and caused injury to me.

My other concern is that following the assault on me by this woman I requested a copy of the police report and was told that I could not have it without approval by Lt. Deal. I explained that I had a right to at least the front page but was still refused it. Finally I contacted Lt. O'Leary complaining of this also and it was eventually released to me. I thought a police report of an incident I was involved in was available through the Freedom of Information Act. I ask that you review this matter and contact me as soon as possible. Please consider this letter a formal complaint to your department.

One last note. I am appalled that as a professional woman and upstanding citizen in this community who has spent most of my life as a Legal Administrator in this community and now dedicate my life to helping the disabled in this community that any police department, let alone my own police department could treat me this way with total disrespect and disregard to the truth at hand and that I now face a breach of the peace charge that is totally unfounded and the woman who assaulted me is not even charged properly.

Thank you for your anticipated cooperation in this matter.

Very truly yours,

Chera Ann Simpson

Sworn and subscribed to me this ___28___ day of June, 2001.

Notary Public
Commissioner of the Superior Court
My Commission expires: 11/30/05

/cs
Enclosure: Witness statement



# OFFICE OF THE SUPERINTENDENT
## Waterbury Police Department
### Waterbury, Connecticut

TO : _IA_  DATE: _7-6-01_

FROM: _Supt EDF_

___ For your information

___ Please follow up

___ As requested by you

___ As per our conversation

___ For your approval

_✓_ Investigate and advise

___ Please reply to the attached memo

___ Please furnish information for reply

___ Please prepare reply for my signature

___ Please discuss this with me

___ Please take suitable action

___ Please comment and return

___ Please refer to proper person to handle

COMMENTS:

# WATERBURY POLICE DEPARTMENT

# INTERNAL AFFAIRS REPORT

**255 EAST MAIN STREET**
**WATERBURY, CONNECTICUT 06702**

**EDWARD FLAHERTY**
**SUPERINTENDENT OF POLICE**

# WATERBURY POLICE DEPARTMENT
## INTERNAL AFFAIRS REPORT

TO:     Superintendent Edward Flaherty

FROM:   Internal Affairs

RE:     Internal Affairs Investigation-Chera Ann Simpson

10-15-01 approved

## COMPLAINT

On June 28, 2001 the Internal Affairs Division was assigned to investigate a notarized complaint from Chera Ann Simpson. The complaint involved an incident that occurred at the Brass Mill Mall and subsequently resulted in her arrest.

Ms Simpson was interviewed and also indicated the following in her letter of complaint. She stated that on April 21, 2001 she drove to the Mall and saw a woman getting out of a vehicle and observed that the vehicle was parked in a handicapped parking spot. Ms Simpson stated that she identified herself to the woman by her name and told her that she was the Chairman for the Commission for Disabilities for the City of Waterbury. She stated that she told the woman she was parked illegally and told her to move her vehicle. Ms Simpson stated that this led to an altercation in which the woman assaulted her.

Ms Simpson stated that she called the Police and that Officer Alenkis arrived and was going to arrest the other woman based on the complaint she had made. Ms Simpson stated that a black sedan pulled up and a male spoke with the Officer. She said that she later learned that the male in the car was Detective Deal. She said that the Officer came back over to her and asked both her and the other woman to go the Detective Division so that statements could be obtained.

Ms Simpson stated that Lieutenant O'Leary told her during subsequent meetings that both she and the other woman would be arrested by a warrant for the altercation. She complained that the woman was only arrested for Breach of Peace, not Assault. (See letter of complaint – Chera Ann Simpson)

## INVESTIGATION

A copy of the incident report, arrest warrant affidavits and statements from all involved parties was obtained and reviewed by this Division. In addition, investigating Officer Barbara Alenkis, Lieutenant O'Leary, Lieutenant Deal and other investigating Detectives were interviewed in regards to this complaint. All indicated that statements were obtained from the involved participants in regards to the original complaint. Based on the

information that was gathered, arrest warrants were applied for and received after being reviewed by the Prosecutor and the Judge.

Officer Alenkis stated that she originally responded to the complaint and contemplated an arrest. She said that while investigating the incident Lieutenant Deal arrived at the scene. The Officer stated that she explained to the Lieutenant the nature of the complaint and discussed it with him and advised him that there were conflicting stories. After discussing this with the Lieutenant she then advised the involved parties of the benefits of obtaining statements and applying for warrants. She stated that all parties agreed to respond to the Detective Division for a follow-up to their complaints. Officer Alenkis stated that due to the conflicting versions of the incident she thought this would lead to a proper resolution to the case.

After the initial interview with Ms Simpson she made several subsequent calls to this Division in regards to her original complaint. Some of the complaints made were:
1. That Lieutenant Deal intervened on behalf of the other woman at the Mall because of the fact that he was related to her.
2. That the charge of Breach of the Peace was an inappropriate charge.
3. That it was a waste of her time in filing a complaint with Internal Affairs because it was our job to cover the Police.
4. That Ms Simpson stated that she had specific knowledge that the arrest warrant affidavits were not reviewed by a Judge in that he never read the information contained therein.
5. That Lieutenant O'Leary threatened her by stating that he would have her removed from the Commission she was on.

Lieutenant Deal indicated that he is not related to the other female involved in the incident although he does know her. The Lieutenant stated that when he spoke with Officer Alenkis at the scene she explained that she had conflicting stories from the involved parties. He stated that he suggested that all involved persons respond to the Detective Division and that statements could be obtained from them.

The charge of Breach of the Peace includes the elements of assault like behavior and in fact was found to be the appropriate charge by the Prosecutor and the Judge who signed the warrant application.

That Ms Simpson was unable to provide any information that would corroborate the claims she made concerning the Judge not reading the warrant application.

Lieutenant O'Leary stated that he never threatened Ms Simpson in any way.

Inspector John Maia, an investigator with the States Attorneys office was interviewed in regards to the complaint made by Ms Simpson. He stated that attempts were made for mediation between Ms Simpson and the other female, Patricia Denardo. He indicated that both females were receptive to the mediation but that Ms Simpson changed her mind. He advised this office that charges were dismissed against both females.

## *CONCLUSION*

On April 21, 2001 Officer Alenkis responded to the Brass Mill Center on a disturbance complaint. Both females involved had called the Police and the stories they provided conflicted with each other. Lieutenant Deal arrived at the scene and suggested that both parties respond to the Detective Division where statements could be obtained. After statements were obtained arrest warrants were applied for and signed by the Prosecutor and Judge who agreed there was probable cause for both females' arrest.

Based on a review of the statements, warrant affidavits and interviews with the involved Officers it is apparent that proper Police procedures were followed.

Ms Simpson has provided what seem to be her delusional perspectives of the incident that occurred. She has made some bizarre accusations concerning the Police and the Judge but was unable to provide any supporting information concerning her claims. Ms Simpson initially encountered the other female (Ms Denardo) by showing her identification that she was a Commissioner on a city board. This suggests that she may have misused her official position as a Commissioner in the City in an attempt to enforce what she believed to be a parking violation. This was a factor that provoked the encounter between Ms Simpson and Ms Denardo. Ms Simpson should have simply notified the Police to report what she perceived to be any violation of the law.

Based on the information obtained it is apparent that the Police followed proper procedures and that the complaint cannot be substantiated.

DATE: 04/21/2001

CASE No.# : 2001-030301

# VOLUNTARY STATEMENT

PLACE STATEMENT TAKEN: 255 East Main Street

I, the undersigned, Chera Simpson of 26 Midfield Drive Apt 17 Waterbury, CT, Tel.# 203 754-8475, being 41 years of age, born at Waterbury, Connecticut on 05/26/1959, do hereby make the following statement to Angel Robles, having first been identified as a Waterbury Police Detective.

My name is Chera Simpson and I am here today to give this statement to Detective Robles of the Waterbury Police Department, about the incident that occurred today April 21, 2001. I understand that this statement can be used in a court of law at a later date.

Today April 21, 2001, my boyfriend Richard Lissanderllo and I arrived at the Brass Mill Center, and were looking for a parking spot. We were by the Basement level of the Ramp Garage in the rear of the mall. I saw a vehicle parked, blocking the handicap entrance, to wheel chairs. I said to a lady who was driving this car, that I am the Chairman of the Commission For Disabilities for the City of Waterbury. I wanted to point this out to her because our functions include making sure that Wheels have access to the larger parking areas.

This lady then asked me for identification, and I presented a business card to her which has my name and title on it. After I presented the card to her this lady without warning, reached into my car and began grabbing my face, and twisting my skin. This lady also bit me in the shoulder and she scratched me. Richard and I still had our seat belts on, and all I could was push this lady away and rolled up the windows. After I pushed this lady away she tried to gain entry into my car, however my alarm went off and automatically locked the doors. I then called 911 and waited for the police to arrive. I spoke to a uniformed police officer and explained to her what happened. This was the end of my involvement with this case. This statement is the truth.

---

The facts herein contained are true and correct, and knowing that any false statement is subject to prosecution under the penalties of Connecticut State Statute 53a-157b, I have given the above statement of my own free will without threat or promise.

Signed _____
Signature of Person giving voluntary statement

Witness: _____     Supervisor _____   04-21-01
                                    Subscribed and Sworn to before me    Date

Page 1 of 1

ORIGINAL COPY            REV. 1 CS

Case 3:02-cv-01471-MRK   Document 35-3   Filed 10/24/2003   Page 17 of 17