EXHIBIT "A"

```
              UNITED STATES DISTRICT COURT
                DISTRICT OF CONNECTICUT
                                                    COPY
```

------------------------------------x
CHERA ANN SIMPSON,                  :
          Plaintiff,                : CIVIL ACTION
                                    : 3:02CV1471 (RNC)
     vs.                            :
                                    :
PATRICIA DENARDO, NEIL O'LEARY,     : May 2, 2003
EDWARD D. FLAHERTY, DAVID BALNIS,   :
DETECTIVE ANGEL ROBLES and          :
MARK DEAL,                          :
          Defendants.               :
------------------------------------x

## DEPOSITION OF CHERA ANN SIMPSON

Taken before Lee Ann Biancucci, LSR #224, RPR, a Court Reporter and Notary Public for the State of Connecticut, pursuant to Re-Notice and the Federal Rules of Civil Procedure, at Sack, Spector & Karsten, 836 Farmington Avenue, West Hartford, Connecticut, on May 2, 2003, commencing at 2:50 p.m.

Tyszka Court Reporting Services
189 Old Forge Road
Riverton, CT  06065
860.379.7955

```
 1
 2                    UNITED STATES DISTRICT COURT
 3                      DISTRICT OF CONNECTICUT
                              COPY
 4       * * * * * * * * * * * * * * * * *
                                         *
 5       CHERA ANN SIMPSON,              *
                        Plaintiff,       *
 6                                       *  Civil Action No.
         VS.                             *  3:02CV1471 (RNC)
 7                                       *  September 9, 2003
         PATRICIA DENARDO, NEIL O'LEARY, *
 8       EDWARD D. FLAHERTY, DAVID BALNIS,*
         DETECTIVE ROBLES and MARK DEAL, *
 9                      Defendants.      *
                                         *
10       * * * * * * * * * * * * * * * * *
11

12           DEPOSITION OF CHERA ANN SIMPSON - VOLUME II
13

14       Taken on behalf of the Defendants in the above-entitled
15       cause, before Patricia Tyszka, Registered Merit
16       Reporter, Notary Public, in and for the State of
17       Connecticut, on Tuesday, September 9, 2003, at 1:40
18       p.m., at the offices of Sack, Spector & Karsten, 836
19       Farmington Avenue, West Hartford, Connecticut, pursuant
20       to the Federal Rules of Civil Procedure.
21
22                       PATRICIA TYSZKA, LSR, RMR
                         COURT REPORTING SERVICES
23                            189 Old Forge Road
                        West Hartland, Connecticut  06091
24                     (860)379-7955  FAX (860)379-7955
25
```

TYSZKA COURT REPORTING SERVICES
(860) 379-7955

```
 1              MR. ARCIERO:  I have one coming in I'll
 2       give to the attorneys.  They can have it
 3       signed --
 4              MR. RUBENS:  Let's go back on the record.
 5              MR. ARCIERO:  -- for Dr. Edwards'
 6       reports.
 7              COURT REPORTER:  Aren't we still on the
 8       record?
 9              MR. ARCIERO:  Yes.
10              THE WITNESS:  Yeah, I signed a release.
11       I know I did.
12              MR. ARCIERO:  That was asked for I
13       believe in --
14              THE WITNESS:  Yeah, I'm sure I signed a
15       release form.
16              MR. RUBENS:  I never got any report.
17              MR. ARCIERO:  We can have her fill this
18       out.
19              MR. RUBENS:  Let's go on.
20  BY MR. RUBENS:
21       Q    Now, at any time did Mrs. Denardo indicate
22  that she was a police officer?
23       A    No.
24       Q    At any time did Mrs. Denardo say that she was
25  a member of the city government of the City of
```

1  Waterbury?

2  A   No.

3  Q   When she did tell you that she worked for the
4  AIDS outreach or whatever it is that she did tell you,
5  all right, you were aware that that organization had
6  nothing to do with any kind of governmental authority;
7  is that right?

8  A   Well, yes I assumed that, yes.

9  Q   All right.  So that all this entire action
10 that you had with Mrs. Denardo at the scene, she was not
11 acting under any color of law?

12 A   Not that I'm aware of.

13 Q   Fine.  That's great.

14     Mr. Lissandrello was here and he gave a
15 deposition on June 27th, 2003.  Now, between April 21st,
16 2001 and June 27th, 2003, were you and Mr. Lissandrello
17 still keeping company?

18 A   I'm sorry.  What were the dates you're asking
19 again?

20 Q   The date of the incident to the date of June
21 27th, 2003 when he gave a deposition.  Okay?  Were you
22 and he keeping company as you did prior to this
23 incident?

24 A   No.  We broke up a few weeks after the
25 incident took place.

TYSZKA COURT REPORTING SERVICES
(860) 379-7955

```
 1    he went to the police and he gave his own statement,
 2    that's between you and him.  I was not there.  I did not
 3    go with him.
 4         Q    I've got nothing to do with it.
 5         A    Well, I can't respond.  I did not go with him.
 6    I was not there.
 7         Q    You didn't prepare that statement that was in
 8    the police record?
 9         A    I did not prepare any statement.  I assisted
10    Richard -- when the police refused to take our
11    statement, I had said, you know, there's really
12    something wrong with that, and I insisted they take his
13    statement.  At that point we sat down and wrote things
14    out together.  Not me.  Together.  But at that point he
15    said, "I'm going to go to the police station," which he
16    did and he spoke to an officer there.  I was not present
17    at the time, I cannot comment on it.
18         Q    Now, you also claim that Mrs. Denardo
19    conspired with the police officers.  When did this
20    conspiracy take place that you allege in your complaint?
21         A    Well, I allege that at the time the police
22    officer, Officer Lundquist (phonetic) arrived, she was
23    about to put Mrs. Denardo under arrest.  She had the
24    handcuffs in her hand to put on.  In the interim of her
25    telling Mrs. Denardo prior to putting the handcuffs on
```

1   that she needed to get out of her car, a call came
2   over -- she was on a cell phone in her car. A call came
3   over the police radio of Officer Lundquist that I could
4   clearly hear, that said another call is coming in
5   requesting Detective Deal at the Waterbury incident. So
6   it was obvious that Mrs. Denardo was calling on her cell
7   phone to get Detective Deal there. When he came, he did
8   not identify himself and certainly didn't say he was
9   related or knew the woman in any way.

   Q   Have you got any evidence that Mrs. Denardo is related to either Lieutenant Deal or Mrs. Deal?

   A   The only evidence I have is his wife -- Detective Deal's wife's phone call to Attorney Avitable's law firm saying that they were related.

   Q   That's your evidence?

   A   Yeah. Yes.

   Q   I want to make sure.

   A   Yes.

   Q   Okay. Did you check any birth records, family records or anything else to establish this relationship between Mrs. Deal and Mrs. Denardo?

   A   I had no reason to. I fully believe that Attorney Avitable's office wouldn't lie to me about her saying something like that.

   Q   Okay. That's fine. Now, what is it you're

1 claiming that Mrs. Denardo said on her cell phone?

2  A  I don't know what she said. I know that a
3 call came in requesting Detective Deal at the scene when
4 the police officer was screaming for Mrs. Denardo to get
5 out of the car or they would break in. She had locked
6 herself in the car making this cell phone call.

7  Q  You don't know who the call was being made
8 to --

9  A  No. I assumed it must have been the police
10 because --

11  Q  Don't assume. Do you know? Do you know --

12  A  For a fact? No.

13  Q  -- as a matter of fact?

14  A  No.

15  Q  Do you know as a matter of fact that at that
16 point Mrs. Denardo was talking to anybody in the
17 Waterbury Police Department?

18  A  By fact? No.

19  Q  Okay. Now, what other evidence do you have
20 that Mrs. Denardo conspired with the Waterbury Police
21 Department against you?

22  A  Well, she went down there several times, did
23 not file a complaint against me, but -- let me finish,
24 please -- but she had Lieutenant O'Leary call me in her
25 presence to tell me what a wonderful person she was,

```
 1    which I thought was very unusual for a police matter to
 2    be handled that way.  I asked Lieutenant O'Leary why
 3    Mrs. Denardo was such a wonderful person and he
 4    certainly didn't take the time to get to know me and
 5    tell her what a wonderful person I was.  That struck me
 6    as very, very unusual, yes.
 7         Q    Maybe he didn't think you were so wonderful.
 8         A    He didn't know me.  How could he make that
 9    judgment?  He certainly seemed to know her.
10         Q    Did the Waterbury Police Department arrest
11    Mrs. Denardo?
12         A    Yes.
13         Q    Did they arrest her as a result of your
14    complaint against her?
15         A    Yes, after I refused to drop the charges after
16    I was asked for an entire week.  They did not even
17    submit my arrest warrant on the day it was signed and
18    submitted.  They waited.
19         Q    Ms. Simpson, did the Waterbury Police
20    Department arrest Mrs. Denardo as a result of your
21    complaint against her?
22         A    Yes.
23         Q    Did Mrs. Denardo appear in court as a result
24    of your complaint?
25         A    I did not see her in court.  I saw her at
```

## CERTIFICATE

STATE OF CONNECTICUT )
) ss: West Hartland, Connecticut
COUNTY OF HARTFORD )

I, Patricia Tyszka, a Notary Public duly commissioned and qualified in and for the County of Hartford, State of Connecticut, do hereby certify that pursuant to notice there came before me on the **9th day of September, 2003, at 1:40 p.m.**, the following named person, to wit: **CHERA ANN SIMPSON**, who was by me duly sworn to testify to the truth and nothing but the truth of his knowledge touching and concerning the matters in controversy in this cause; and that she was thereupon carefully examined upon her oath and her testimony reduced to writing under my direction; that the deposition is a true record of the testimony given by the witness; **that the deposition may be signed before a Notary Public.**

I further certify that I am neither attorney nor counsel for, nor related to, nor employed by any of the parties to the action in which this deposition is taken, and further that I am not a relative or employee of any attorney or counsel employed by the parties hereto or financially interested in the action.

In witness whereof I have hereunto set my hand and affixed my notarial seal this 26th day of September, 2003.

Patricia Tyszka, LSR, RMR
Notary Public
License No. 00046

My commission expires
May 31, 2005

TYSZKA COURT REPORTING SERVICES
(860) 379-7955