UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

COPY

* * * * * * * * * * * * * * * * * *
\*
CHERA ANN SIMPSON,                          \*
         Plaintiff,                    \*
                                       \* Civil Action No.
VS.                                          \* 3:02CV1471 (RNC)
                                       \* October 3, 2003
PATRICIA DENARDO, NEIL O'LEARY,             \*
EDWARD D. FLAHERTY, DAVID BALNIS,           \*
DETECTIVE ROBLES and MARK DEAL,             \*
         Defendants.                    \*
                                       \*
* * * * * * * * * * * * * * * * * *


**DEPOSITION OF JOHN MAIA**


Taken on behalf of the Defendants in the above-entitled cause, before Patricia Tyszka, Registered Merit Reporter, Notary Public, in and for the State of Connecticut, on Friday, October 3, 2003, at 1:00 p.m., at the offices of Sack, Spector & Karsten, 836 Farmington Avenue, West Hartford, Connecticut, pursuant to the Federal Rules of Civil Procedure.


*PATRICIA TYSZKA, LSR, RMR*
*COURT REPORTING SERVICES*
*189 Old Forge Road*
*West Hartland, Connecticut   06091*
*Phone/Fax (860) 379-7955*

```
 1        shouldn't have been done or that shouldn't have been
 2        done.
 3             Q    And after you got the complaint from
 4        Mr. Connelly and looked into it, did you ever report
 5        back to Mr. Connelly about problems involving the
 6        Waterbury Police Department or the officers who
 7        investigated --
 8             A    No.
 9             Q    So everything was done --
10             A    I explained to Mr. Connelly that both parties
11        would be satisfied with resolving this matter and that I
12        even had an appointment with Simpson's attorney for 5:00
13        o'clock one of the nights when I got off work when we
14        went to Grand Street.  And what I did, I didn't even get
15        involved.  I stayed downstairs, let Attorney Avitable
16        which was -- that was his client, Ms. Simpson.  And at
17        one point I waited around I guess it was about a half an
18        hour or something.
19                  I don't know what Ms. Denardo did or what
20        Ms. Simpson did up in that office of Louis Avitable's,
21        but when they came downstairs I thought it was a happy
22        ending.  They hugged each other and I felt that, hey,
23        maybe everything -- and I let Connelly know about that.
24        I said I think we're all set with this matter here.
25             Q    Now, did you ever discuss with Mr. Connelly
```

1    the complaint she had specifically about the Waterbury

2    Police Department?

3        A    Yes.  I explained that she had a complaint

4    about the Waterbury Police Department, but the complaint

5    to me, through my experience, it was -- based on my

6    experience, someone, if I may say --

7            **THE WITNESS:**  (To Attorney Brooks) Should

8        I discuss it with you first before I say it?

9            I think I'll be all right saying it.

10       A    Bottom line, through my experience, if I was

11   in Ms. Simpson's position I would have contacted the

12   Waterbury Police Department or security.  I feel that

13   she initiated it by going over there and bothering

14   Ms. Denardo.  If she got a complaint, through my

15   experience, notify the police department or security.  I

16   think she initiated the whole thing.  All right?  And

17   then they're both older persons.  Both of them I could

18   recall that they never been arrested.  I think it was

19   very nice of them to allow a cooling-off period, through

20   my experience, and see if you could resolve this without

21   coming into court with both of these people that never

22   been arrested.  Everybody makes mistakes, no big deal.

23           I think the Waterbury Police Department did a

24   good job basically investigating it, and then when

25   nobody was satisfied, to apply for a warrant which is

1   the proper way. They could use their own discretion,
2   through my own experience.
3           Bottom line, went through the process in
4   court. She had a lawyer, Ms. Simpson. No problems. We
5   tried every way. We tried this way and we tried that
6   way, we tried every way we possibly can to satisfy her.
7   Even went out of the way to bring her to her own
8   lawyer's office -- knowing my position, don't even go
9   upstairs -- and then see them both happy at the end. I
10  think that was nice. Then I hear about this and I say,
11  wow.
12          So that's my honest opinion, and through my
13  experience I feel that this is a waste of a lot of
14  people's time.
15  **BY MR. ARCIERO:**
16      Q   Have you ever reviewed the arrest warrants for
17  Ms. Simpson and Ms. Denardo?
18      A   Yeah, I did.
19      Q   At what point in time did you review the
20  warrants?
21      A   After they were made out. Not right after.
22      Q   After they were signed or -- by the state's
23  attorney and by the judge or --
24      A   After it was in the file. After it was
25  processed.

1   Q   Thirty years as an officer with the Waterbury
2   Police Department?
3   A   Correct.
4   Q   And 12 years as an inspector/investigator with
5   the state's attorney's office?
6   A   Twelve years as an inspector for the state's
7   attorney's office. To explain the officer part, I was a
8   patrolman five years, traffic eight years, 17 years as a
9   detective. But a total of 30 years.
10  Q   So you do have a number of years in
11  investigating --
12  A   Correct.
13  Q   How many people did you talk to about this
14  incident? By that I mean -- let's go over them:
15  Ms. Denardo, Ms. Simpson, Detective O'Leary -- or
16  Lieutenant O'Leary?
17  A   Not much with that. Not with --
18  Q   Any other police officers that were involved
19  in the incident that took place at that mall?
20  A   No.
21  Q   Or any of the officers who were involved with
22  processing her -- or Simpson's arrest or Denardo's
23  arrest?
24  A   No.
25  Q   Okay. In the investigation that you did do at

TYSZKA COURT REPORTING SERVICES
(860) 379-7955

```
 1        the request of prosecuting attorney Connelly, did you
 2        find any evidence of any kind of a conspiracy among the
 3        Waterbury Police Department, and including Mrs. Denardo,
 4        to deny any civil rights of Ms. Simpson?
 5             A    No.
 6             Q    Was there anything that you learned in the
 7        investigation that would make you suspect that such a
 8        conspiracy existed?
 9             A    No.
10             Q    At the time of this incident -- well, you've
11        stated you did not know Mrs. Denardo prior.
12             A    Correct.
13             Q    Did you have any information concerning
14        whether or not she was employed in any manner with the
15        City of Waterbury?
16             A    If the position she had worked with that
17        brought that AIDS question up, if that's with the city,
18        I don't have any knowledge of that.
19             Q    Do you know whether or not she worked for any
20        state organization?
21             A    I was going to say, where she worked I really
22        couldn't tell you, if it was state or city where she was
23        employed at.
24             Q    In your opinion, in your opinion, based on 42
25        years of being around the court system, investigating
```

1   complaints, et cetera, do you believe that Mrs. Denardo
2   was treated any differently than Ms. Simpson was as a
3   result of this incident?
4       A    I can only speak for what I did.  I can't
5   speak for anybody else.
6       Q    In your opinion.
7       A    I treated them both the same.
8       Q    Whatever paperwork you examined in connection
9   with this case, was there anything that led you to
10  believe that one person was treated differently than the
11  other?
12      A    No.
13      Q    Again -- and you may have stated this because
14  sometimes my hearing isn't so good.  Do you have a file
15  on this incident?
16      A    We have information because it went through
17  our process.  There is a file on Simpson, there is a
18  file on Denardo based on the warrant that was applied
19  for.  And I remember that recently, after I was
20  subpoenaed, I pulled out the file and I saw they were
21  both dismissed cases.
22      Q    Now, you have a written report in that file of
23  your investigation?
24      A    I'll have to check.  I know that we have a
25  state's attorney's file.  I'd have to check.

```
 1                    CROSS-EXAMINATION
 2
 3      BY MS. BROOKS:
 4          Q    Mr. Maia, I have a couple of questions for
 5      you.
 6               How does the ranking go in the Waterbury
 7      Police Department?  You start off as a road patrol
 8      officer?
 9          A    Road patrol.
10          Q    Then what's next?
11          A    Patrolman.  Then if you -- a detective after
12      that; promotion, take a test.  And after detective it's
13      a sergeant, and after sergeant, pass the test,
14      lieutenant.  And after lieutenant's the captain.  And
15      once you're a captain, then you take a test for deputy
16      chief, superintendent.  So you have deputy chief and
17      superintendent.
18          Q    Okay.  Now, the night of this -- or the day of
19      this incident at the Waterbury mall, you weren't present
20      for that?
21          A    No, I wasn't.
22          Q    And you didn't have anything to do with
23      deciding who was going to get arrested?
24          A    No.
25          Q    And you didn't write any of the police
```

TYSZKA COURT REPORTING SERVICES
(860) 379-7955

1

2                              CERTIFICATE

3

4     STATE OF CONNECTICUT )
                           )    ss: West Hartland, Connecticut
5     COUNTY OF HARTFORD   )

6         I, Patricia Tyszka, a Notary Public duly
   commissioned and qualified in and for the County of
7  Hartford, State of Connecticut, do hereby certify that
   pursuant to notice there came before me on the **3rd day
8  of October, 2003, at 1:00 p.m.**, the following named
   person, to wit: **JOHN MAIA**, who was by me duly sworn to
9  testify to the truth and nothing but the truth of his
   knowledge touching and concerning the matters in
10 controversy in this cause; and that he was thereupon
   carefully examined upon his oath and his testimony
11 reduced to writing under my direction; that the
   deposition is a true record of the testimony given by
12 the witness; **that the reading and signing of the
   deposition is waived**.

13

       I further certify that I am neither attorney nor
14 counsel for, nor related to, nor employed by any of the
   parties to the action in which this deposition is taken,
15 and further that I am not a relative or employee of any
   attorney or counsel employed by the parties hereto or
16 financially interested in the action.

17   In witness whereof I have hereunto set my hand and
   affixed my notarial seal this _____ day of
18 _____, 2003.

19

20                                  _____
                                    Patricia Tyszka, LSR, RMR
21                                  Notary Public
                                    License No. 00046
22
                                    My commission expires
23                                  May 31, 2005

24

25

TYSZKA COURT REPORTING SERVICES
(860) 379-7955