FILED
Nov 24 12 26 PM '03
U.S. DISTRICT COURT
NEW HAVEN, CONN.

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

CHERA ANN SIMPSON          :

VS.                        :
                           :     NO. 3:02CV1471(MRK)
PATRICIA DENARDO,          :
NEIL O'LEARY,              :
EDWARD D. FLAHERTY,        :
DAVID BALNIS,              :
DETECTIVE ROBLES and       :
MARK DEAL                  :     NOVEMBER 23, 2003

### PLAINTIFF'S CONSOLIDATED LOCAL RULE 56(a)2 REPORT

*I*  *RESPONSES TO POLICE DEFENDANTS' CLAIMS OF FACT:*

1. Disagree. DeNardo was not "parked in a handicapped zone." Rather, she was parked in a loading-unloading area for wheelchair-bound persons. Her "handicap parking" sticker did not give her the right to park in that area. (Lissandrello affidavit, ¶ 1)

2. Disagree. DeNardo made no such claims to the investigating officer. (Report of Officer Alenckis)

3. Agree.

4. Agree that defendant Deal, upon learning that his friend, defendant DeNardo, was about to be arrested, drove over to the area. Otherwise,

disagree. (Plaintiff's deposition transcript, pp. 172-73; Internal Affairs report[1])

5. Disagree. Officer Alenckis did not state that defendant DeNardo was complaining about the plaintiff and in fact DeNardo was not doing so. The report of Officer Alenckis makes no mention of any complaint by DeNardo and consistently refers to the plaintiff as the "complainant" and DeNardo as the "accused". Indeed, the report of Officer Alenckis states that defendant DeNardo admitted to assaulting the plaintiff and claimed as her only defense that the plaintiff had sworn at her. (Alenckis report)

6. Agree.

7. Agree.

8. Agree.

9. Agree.

10. Agree.

11. Agree in part. Disagree with any implication that the witness's statement was not offered on the scene of the incident and later on the same day at police headquarters. (Plaintiff's sworn interrogatory answers, ¶ 10)

12. Objection. Irrelevant.

13. Agree that DeNardo signed a statement prepared by the police on

---

[1] Some judges of this court, and others, have criticized the undersigned for not citing to pages of documents in preparing Local Rule 56(a)2 Statements. However, the Internal Affairs report submitted by the defendants has no page numbers on it.

April 29, after defendant O'Leary had threatened the plaintiff that he would have her do so if plaintiff did not drop her complaint. Otherwise, disagree. (DeNardo Statement; Plaintiff's deposition transcript, pp. 121-22, 141)

14. Agree.

15. Agree.

16. Agree.

17. Agree that the plaintiff was nervous and intimidated by defense counsel at her deposition.

18. Agree.[2]

19. Agree.

20. Agree that the prosecutor made those statements.[3]

21. Agree.

22. Agree.

23. Agree that the internal affairs report so states.

---

[2] Plaintiff notes that, in violation of Local Rule 56(a), the defendants have not provided the court with any record citation for this assertion.

[3] Plaintiff notes that the defendants have failed to provide any page citations for this assertion. Another attorney in defense counsel's firm has severely criticized the undersigned, before the Court of Appeals, for failing to include such a citation.

## II. RESPONSES TO DEFENDANT DeNARDO'S CLAIMS OF FACT

1. Agree.

2. Disagree. DeNardo was not "parked in a handicapped zone." Rather, she was parked in a loading-unloading area for wheelchair-bound persons. Her "handicap parking" sticker did not give her the right to park in that area. (Lissandrello affidavit, ¶ 1; plaintiff's deposition transcript, pp. 153-54)

3. Agree.

4. Agree that the plaintiff objected to defendant DeNardo parking in an area reserved for the loading and unloading of wheelchair-bound persons.

5. Disagree. (Lissandrello affidavit, ¶ 1; plaintiff's sworn statement to Supt. Flaherty, p. 1; plaintiff's sworn statement to defendant Robles)

6. Agree.

7. Agree that defendant Deal, upon learning that his friend, defendant DeNardo, was about to be arrested, drove over to the area. Also agree that the plaintiff -- and only the plaintiff -- went to the Waterbury Police Department at that time. Otherwise, disagree. (Plaintiff's deposition transcript, pp. 172-73; Internal Affairs report; DeNardo statement)

8. Agree.

9. Disagree. The transcript shows that the prosecutor nolled the charges but that the court dismissed them.

10. Agree.

11. Agree.

12. Disagree. (Internal Affairs report; plaintiff's interrogatory answers, ¶¶ 10, 19; plaintiff's deposition transcript, pp. 172-75)

## III     PLAINTIFF'S STATEMENT OF MATERIAL FACTS

1. On Saturday, April 21, 2001, at approximately 6:45 p.m., the plaintiff and her friend Richard Lissandello went to the Brass Mill Mall in Waterbury to have coffee. As the plaintiff was parking the car, they noticed defendant DeNardo, with a young girl, parking in the three-foot access areas designated for a wheelchair. The plaintiff rolled down the window and identified herself as Chairman of the Commission for Disabilities for the City of Waterbury and nicely explained to DeNardo that the area was reserved for wheelchairs. DeNardo became very angry and said to the plaintiff: "Show me your identification and I'll show you mine." The plaintiff then showed DeNardo her identification but decided that DeNardo was acting irrationally and that the wiser course of action would be to note her license number, drive away and notify the police. As the plaintiff was attempting to do so, DeNardo without warning came into the window of the plaintiff's car and started assaulting the plaintiff by grabbing her face, scratching her, etc. The plaintiff was in a seatbelt and had trouble escaping from DeNardo's attack. Eventually she was able to roll up the window of her car and call "911" on her cellular telephone. (Lissandello affidavit, ¶ 1)

2. Officer Alenckis arrived and questioned everybody involved; then she told defendant DeNardo that she had to place her under arrest for assault. DeNardo claimed to the officer that the plaintiff had sworn at her, which was a lie. Mr. Lissandello assured Officer Alenckis that the plaintiff had not done so. Officer Alenckis told DeNardo that even if the plaintiff had sworn at her she still had to be arrested for assault because she had admitted having done so and had no right to do so. At that point, defendant Deal arrived. He motioned for Officer Alenckis and spoke to her for approximately ten to fifteen minutes. Officer Alenckis then came to the plaintiff's car and asked the plaintiff and Mr. Lissandello to go to the police department to sign a statement. When they did so, they were told by defendant Robles, who took the plaintiff's statement, that no arrest had been made and that they should not ask any questions. The plaintiff asked Robles if he would take a statement from Lissandello but Robles refused to do so, claiming that Lissandello was "a biased witness." (Id. ¶ 2)

3. Defendant DeNardo had parked her car in such a manner that wheelchair-bound persons were blocked from access to the mall. In fact, she had squeezed her car into two three-foot access areas so that the person with the handicapped van on one side of it could not even get into his vehicle. When the plaintiff spoke to her about that unlawful and immoral action, DeNardo assaulted the plaintiff without warning, reaching into the plaintiff's car, grabbing the plaintiff's face, twisting the plaintiff's skin, scratching the plaintiff, and biting

her. (Plaintiff's 4/21/01 Affidavit; Plaintiff's Deposition Transcript, p. 162)

4. Officer Alenckis, in her contemporaneous official report of the incident, which she investigated, characterized the actions of defendant DeNardo as an assault. (Alenckis report)

5. Officer Alenckis observed visible marks on the plaintiff's body where DeNardo has assaulted her. (Ibid.)

6. Defendant DeNardo admitted to Officer Alenckis that she had assaulted the plaintiff. (Ibid.)

7. Defendant Deal intervened and as a result of his intervention DeNardo was not arrested on the scene. (Ibid.)

8. Defendant Deal did not just happen upon the scene. While Officer Alenckis was attempting to arrest defendant DeNardo, defendant DeNardo locked herself inside her car and placed a call on her cellphone. Immediately thereafter, a call came over the police radio of Officer Alenckis stating that defendant Deal was coming. (Plaintiff's Deposition Transcript, pp. 173-74)

9. Defendant Deal was a Lieutenant at the time and Alenckis was a patrol officer. (Internal Affairs Report)

10. Defendant Deal states that he is not related to DeNardo but admits that "he does know her." (Ibid.)

11. Defendant Deal claimed to the Internal Affairs investigator that Officer Alenckis had received "conflicting stories" from the parties; but that statement is

false. The report of Officer Alenckis clearly shows that there was no conflict whatsoever about the fact that DeNardo had assaulted the plaintiff and that the plaintiff had not committed any offense. (Ibid.; Alenckis report)

12. DeNardo refused to allow Officer Alenckis to speak with her granddaughter, who had witnessed the entire incident. (Plaintiff's sworn report to Supt. Flaherty, p. 1)

13. Officer Alenckis stated to DeNardo that she was being placed under arrest for assault. (Ibid.)

14. Defendant Deal then drove up, spoke at length with Officer Alenckis, and thereupon DeNardo was released from custody without being arrested. (Ibid.)

15. DeNardo led the plaintiff to believe at the time of the assault that she might have been infected with AIDS. As a result, the plaintiff suffered severe emotional trauma and underwent additional medical consultation and treatment. (Id., p. 2)

16. In addition to visiting the hospital emergency room for treatment of the injuries inflicted upon her by defendant DeNardo, the plaintiff consulted with her personal physician, who recommended immunization against Hepatitis B and further advised the plaintiff not to undergo immediate treatment for HIV exposure because of the plaintiff's severe disabilities. (Dr. Edwards letter dated 10/20/03; Plaintiff's Interrogatory Responses, ¶¶ 3, 4, 5, 14, 22)

17. Officer Alenckis was placing handcuffs on defendant DeNardo when defendant Deal drove up and stopped her. (Id. ¶¶ 10, 19)

18. Defendant O'Leary telephoned the plaintiff repeatedly, urging her to drop her charges against defendant DeNardo. Eventually, he threatened the plaintiff that if the plaintiff did not agree to drop charges against DeNardo he would get DeNardo to come into the police department and press criminal charges against the plaintiff. (Id. ¶ 10; Plaintiff's Deposition Transcript, pp. 121-22, 141)

19. Defendant DeNardo did not give a statement to the police until April 29, 2001, more than a week after the incident and after O'Leary's calls to the plaintiff. The statement she gave was not written by her but was prepared by the police themselves. (DeNardo Affidavit)

20. All of the material allegations against the plaintiff contained in DeNardo's statement were false and directly contrary to the statement she had given Officer Alenckis on the scene of her crime. (Alenckis Report; Plaintiff's Interrogatory Answers, ¶¶ 10, 21)

21. Despite the fact that DeNardo had admitted assaulting the plaintiff, and the officer at the scene characterized her conduct, in writing, as an assault, defendants Balnis and O'Leary charged her only with breach of peace. (DeNardo arrest warrant)

22. The arrest warrant affidavits prepared and executed by defendants

O'Leary and Balnis omitted the fact that Officer Alenckis had placed DeNardo under arrest for assault at the scene of the crime, omitted the fact that Officer Alenckis had reported in writing that DeNardo made no accusations against the plaintiff other than swearing, and falsely represented that DeNardo had parked in a handicap parking space rather than in a wheelchair loading/unloading zone. (Simpson Arrest Warrant Affidavit)

THE PLAINTIFF

BY /s/
JOHN R. WILLIAMS (ct00215)
Williams and Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT 06510
203.562.9931
FAX: 203.776.9494
E-mail: jrw@johnrwilliams.com
Her Attorney

**CERTIFICATION OF SERVICE**

On the date above stated, copies hereof were mailed to Christopher G. Arciero, Esq., Sack, Spector and Karsten, LLP, 836 Farmington Avenue, West Hartford, CT 06119-1544; and Raymond B. Rubens, Esq., P. O. Box 1555, Bridgeport, CT 06601-1555.

/s/ John R. Williams