

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

CHERA ANN SIMPSON    :
            :
VS.           :
            :  NO. 3:02CV1471(MRK)
PATRICIA DENARDO,    :
NEIL O'LEARY,      :
EDWARD D. FLAHERTY,   :
DAVID BALNIS,      :
DETECTIVE ROBLES and   :
MARK DEAL       :  NOVEMBER 23, 2003

### PLAINTIFF'S CONSOLIDATED BRIEF IN OPPOSITION
### TO MOTIONS FOR SUMMARY JUDGMENT

Plaintiff submits this consolidated brief in opposition to both pending

motions for summary judgment.

This action has been brought against Patricia DeNardo, a civilian;

Detective Neil O'Leary of the Waterbury Police Department; former

Superintendent Edward Flaherty of that department; Detective David Balnis of

that department; Detective Robles of that department; and Lt. Mark Deal of that

department.  The plaintiff alleges that defendant DeNardo assaulted her and that

the police defendants, in an effort to cover up that crime and protect DeNardo

from prosecution, misled the court and prosecutors, pressured the plaintiff, and

1

caused the plaintiff to be arrested and prosecuted for a crime they knew she had not committed.

As set forth in the relevant affidavits and other documents before the court, and as summarized in the plaintiff's Local Rule 56(a) Statement, the facts are as follows: On Saturday, April 21, 2001, at approximately 6:45 p.m., the plaintiff and her friend Richard Lissandello went to the Brass Mill Mall in Waterbury to have coffee. As the plaintiff was parking the car, they noticed defendant DeNardo, with a young girl, parking in the three-foot access areas designated for a wheelchair. The plaintiff rolled down the window and identified herself as Chairman of the Commission for Disabilities for the City of Waterbury and nicely explained to DeNardo that the area was reserved for wheelchairs. DeNardo became very angry and said to the plaintiff: "Show me your identification and I'll show you mine." The plaintiff then showed DeNardo her identification but decided that DeNardo was acting irrationally and that the wiser course of action would be to note her license number, drive away and notify the police. As the plaintiff was attempting to do so, DeNardo without warning came into the window of the plaintiff's car and started assaulting the plaintiff by grabbing her face, scratching her, etc. The plaintiff was in a seatbelt and had trouble escaping from DeNardo's attack. Eventually she was able to roll up the window of her car and call "911" on her cellular telephone. (Lissandello affidavit,

2

¶ 1)

    Officer Alenckis arrived and questioned everybody involved; then she told defendant DeNardo that she had to place her under arrest for assault.  DeNardo claimed to the officer that the plaintiff had sworn at her, which was a lie.  Mr. Lissandello assured Officer Alenckis that the plaintiff had not done so.  Officer Alenckis told DeNardo that even if the plaintiff had sworn at her she still had to be arrested for assault because she had admitted having done so and had no right to do so.  At that point, defendant Deal arrived.  He motioned for Officer Alenckis and spoke to her for approximately ten to fifteen minutes.  Officer Alenckis then came to the plaintiff's car and asked the plaintiff and Mr. Lissandello to go to the police department to sign a statement.  When they did so, they were told by defendant Robles, who took the plaintiff's statement, that no arrest had been made and that they should not ask any questions.  The plaintiff asked Robles if he would take a statement from Lissandello but Robles refused to do so, claiming that Lissandello was "a biased witness."  (Id. ¶ 2)

    Defendant DeNardo had parked her car in such a manner that wheelchair-bound persons were blocked from access to the mall.  In fact, she had squeezed her car into two three-foot access areas so that the person with the handicapped van on one side of it could not even get into his vehicle.  When the plaintiff spoke to her about that unlawful and immoral action, DeNardo assaulted the plaintiff

3

without warning, reaching into the plaintiff's car, grabbing the plaintiff's face, twisting the plaintiff's skin, scratching the plaintiff, and biting her. (Plaintiff's 4/21/01 Affidavit; Plaintiff's Deposition Transcript, p. 162)

Officer Alenckis, in her contemporaneous official report of the incident, which she investigated, characterized the actions of defendant DeNardo as an assault. (Alenckis report) Officer Alenckis observed visible marks on the plaintiff's body where DeNardo has assaulted her. (Ibid.) Defendant DeNardo admitted to Officer Alenckis that she had assaulted the plaintiff. (Ibid.)

Defendant Deal intervened and as a result of his intervention DeNardo was not arrested on the scene. (Ibid.) Defendant Deal did not just happen upon the scene. While Officer Alenckis was attempting to arrest defendant DeNardo, defendant DeNardo locked herself inside her car and placed a call on her cellphone. Immediately thereafter, a call came over the police radio of Officer Alenckis stating that defendant Deal was coming. (Plaintiff's Deposition Transcript, pp. 173-74) Defendant Deal was a Lieutenant at the time and Alenckis was a patrol officer. (Internal Affairs Report) Defendant Deal states that he is not related to DeNardo but admits that "he does know her." (Ibid.) Defendant Deal claimed to the Internal Affairs investigator that Officer Alenckis had received "conflicting stories" from the parties; but that statement is false. The report of Officer Alenckis clearly shows that there was no conflict

4

whatsoever about the fact that DeNardo had assaulted the plaintiff and that the plaintiff had not committed any offense. (Ibid.; Alenckis report)

DeNardo refused to allow Officer Alenckis to speak with her granddaughter, who had witnessed the entire incident. (Plaintiff's sworn report to Supt. Flaherty, p. 1) Officer Alenckis stated to DeNardo that she was being placed under arrest for assault. (Ibid.) Defendant Deal then drove up, spoke at length with Officer Alenckis, and thereupon DeNardo was released from custody without being arrested. (Ibid.)

DeNardo led the plaintiff to believe at the time of the assault that she might have been infected with AIDS. As a result, the plaintiff suffered severe emotional trauma and underwent additional medical consultation and treatment. (Id., p. 2) In addition to visiting the hospital emergency room for treatment of the injuries inflicted upon her by defendant DeNardo, the plaintiff consulted with her personal physician, who recommended immunization against Hepatitis B and further advised the plaintiff not to undergo immediate treatment for HIV exposure because of the plaintiff's severe disabilities. (Dr. Edwards letter dated 10/20/03; Plaintiff's Interrogatory Responses, ¶¶ 3, 4, 5, 14, 22)

Officer Alenckis was placing handcuffs on defendant DeNardo when defendant Deal drove up and stopped her. (Id. ¶¶ 10, 19)

Defendant O'Leary telephoned the plaintiff repeatedly, urging her to drop

5

her charges against defendant DeNardo. Eventually, he threatened the plaintiff that if the plaintiff did not agree to drop charges against DeNardo he would get DeNardo to come into the police department and press criminal charges against the plaintiff. (Id. ¶ 10; Plaintiff's Deposition Transcript, pp. 121-22, 141)

Defendant DeNardo did not give a statement to the police until April 29, 2001, more than a week after the incident and after O'Leary's calls to the plaintiff. The statement she gave was not written by her but was prepared by the police themselves. (DeNardo Affidavit) All of the material allegations against the plaintiff contained in DeNardo's statement were false and directly contrary to the statement she had given Officer Alenckis on the scene of her crime. (Alenckis Report; Plaintiff's Interrogatory Answers, ¶¶ 10, 21)

Despite the fact that DeNardo had admitted assaulting the plaintiff, and the officer at the scene characterized her conduct, in writing, as an assault, defendants Balnis and O'Leary charged her only with breach of peace. (DeNardo arrest warrant) The arrest warrant affidavits prepared and executed by defendants O'Leary and Balnis omitted the fact that Officer Alenckis had placed DeNardo under arrest for assault at the scene of the crime, omitted the fact that Officer Alenckis had reported in writing that DeNardo made no accusations against the plaintiff other than swearing, and falsely represented that DeNardo had parked in a handicap parking space rather than in a

6

wheelchair loading/unloading zone. (Simpson Arrest Warrant Affidavit)

The defendants have moved for summary judgment. Defendant DeNardo simply claims that she was not acting under color of law and was not acting in concert with the police defendants. The police defendants assert that there was probable cause for the plaintiff's arrest, that they are able to prove the affirmative defense of qualified immunity, and that some of them were insufficiently involved in any activities with the plaintiff for them to be liable.

The plaintiff agrees that there is insufficient evidence of culpable involvement by defendants Flaherty and Robles. Accordingly, this action is withdrawn as to them. As to the other defendants, however, the court has before it enough evidence to require that the action go forward.

"The standards governing summary judgment are well-settled. Summary judgment is appropriate only 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits..., show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Fed. R. Civ. P. 56(c); *see also* <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.

"In determining whether a genuine issue of material fact exists, a court

7

must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant....Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002).

When the moving party "'fail[s] to fulfill its initial burden' of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied, 'even if no opposing evidentiary matter is presented,' for the non-movant is not required to rebut an insufficient showing." Giannullo v. City of New York, 322 F.3d 139, 140-41 (2nd Cir. 2003), quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 158, 160 (1970). "[T]he moving party bears the ultimate burden of establishing its right to summary judgment as a matter of law even when it does not have the ultimate burden of persuasion at trial." Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 982 (10th Cir. 2003).

When passing upon a motion for summary judgment, the court may not resolve factual disputes or make credibility determinations, even if the case is one which eventually will be tried without a jury.  In re Unisys Savings Plan Litigation, 74 F.3d 420 (3d Cir. 1996).  Rather, the court must resolve any ambiguities and draw all inferences against the moving party.  Appleton v. Board

8

of Education, 254 Conn. 205, 757 A.2d 1059 (2000); Cargill, Inc. v. Charles Kowsky Resources, Inc., 949 F.2d 51 (2d Cir. 1991). The evidence of the party against whom summary judgment is sought must be believed. Revak v. SEC Realty Corp., 18 F.3d 81 (2d Cir. 1994). The court must construe the evidence in the light most favorable to the party opposing summary judgment and deny the motion unless no construction of the evidence could support judgment in the plaintiff's favor. Appleton, supra; Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970); Olin Corp. v. Consolidated Aluminum Corp., 5 F.3d 10, 14 (2d Cir. 1993); United States v. Certain Funds on Deposit in Scudder Tax Free Investment Account #2505103, 998 F.2d 129 (2d Cir. 1993); Union Pacific Corp. v. United States, 5 F.3d 523, 525 (Fed. Cir. 1993); Suarez v. Dickmont Plastics Corp., 229 Conn. 99, 105 (1994); D.H.R. Construction Co. v. Donnelly, 180 Conn. 430, 434 (1980); Connell v. Colwell, 214 Conn. 242, 246-47 (1990). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

To raise a genuine issue of material fact sufficient to defeat a summary judgment motion, the opponent need not match, item for item, each piece of evidence proffered by the moving party. So long as the opponent has offered

9

enough evidence to exceed the "mere scintilla" threshold, summary judgment is to be denied. In re Unisys Savings Plan Litigation, supra, 74 F.3d 420, 433.

Even if the nonmoving party's evidence appears "implausible," the court may not "weigh" the evidence and must proceed with the greatest caution. R. B. Ventures, Ltd. v. Shane, 112 F.3d 54, 58-59 (2d Cir. 1997). "If reasonable minds could differ as to the import of the evidence...and if...there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." Id. at 59, quoting Brady v. Town of Colchester, 863 F.2d 205, 211 (2d Cir. 1988), and In re Japanese Elec Prods. Antitrust Litigation, 723 F.2d 238 (3d Cir. 1983) (internal quotation marks omitted).

"A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non moving party.' Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, '[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.'" Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir. 1997). Citing Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

"[T]he Second Circuit has cautioned that, in cases where motive, intent or

10

state of mind are at issue, summary judgment should be used sparingly."

Ruscoe v. Housing Authority of City of New Britain, 259 F. Supp. 2d 160, 166 (D.

Conn. 2003) (Nevas, J.), citing Dister v. Continental Group, Inc., 859 F.2 1108,

1114 (2nd Cir. 1988).

In this case, the defendant DeNardo obviously, at a minimum, is liable to

the plaintiff for commonlaw assault and battery. E.g., Lentine v. McAvoy, 105

Conn 528, 531 (1927); Morris v. Platt, 32 Conn. 75, 87 (1864). Her brief does

not argue otherwise.[1]  She contends, however, that she should be let off the

hook on the plaintiff's contention that she acted jointly with the defendants in

perpetrating the plaintiff's false arrest and malicious prosecution.  That argument

---

[1]

The debate of earlier times about pendent jurisdiction of related state law claims
under United Mine Workers v. Gibbs, 383 U.S. 715 (1966), and Carnegie-Mellon
University v. Cohill, 484 U.S. 343 (1988), was mooted by the adoption of the
Judicial Improvements Act of 1990, 28 U.S.C. § 1367(a), authorizing district
courts in federal question cases to exercise supplemental jurisdiction over both
additional claims and additional parties if they are "so related...that they form part
of the same case or controversy...."  It is the clear intent of the statute that all
issues arising out of a single event should be tried together in one trial and not
split between federal and state courts as was too often the case in days of yore.
See Miller v. Lovett, 879 F.2d 1066 (2d Cir. 1989).  The statute imposes a
mandatory requirement that the courts accept related state tort claims.  McLaurin
v. F. C. Prater, 30 F.3d 982 (8th Cir. 1994); Surprise v. GTE Service Corp., 47 F.
Supp. 2d 240 (D. Conn. 1999) (Arterton, J.).  Even if the police defendants were
to prevail, the court would be well within its discretionary authority to retain this
matter for trial.  Da Silva v. Kinsho International Corp., 229 F.3d 358 (2d Cir.
2000); Mauro v. Southern New England Telecommunications, Inc., 208 F.3d
384, 388 (2d Cir. 2000); Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d
1182 (2d Cir. 1996).

11

actually is in two parts: (1) whether she can be held jointly liable with the defendants; (2) whether, regardless of joint liability, she is herself responsible for malicious prosecution.

A civil conspiracy can be proved entirely by circumstantial evidence, at least as easily as a criminal one.  Hampton v. Hanrahan, 600 F.2d 600, 621 (7th Cir. 1979); Hoffman-LaRoche, Inc. v. Greenberg, 447 F.2d 872, 875 (7th Cir. 1971); Mendocino Environmental Center v. Mendocino County, 192 F.3d 1283 (9th Cir. 1999); Fisher v. Shamburg, 624 F.2d 156, 162 (10th Cir. 1980); Rutledge v. Electric Hose & Rubber, 327 F. Supp. 1267, 1273 (C.D. Calif. 1971); Lyle v. Teresi, 327 F. Supp. 683, 684 (D. Minn. 1971).

"Though the common design is the essence of the charge, it is not necessary to prove that the defendants came together and actually agreed, in terms, to have that design, and to pursue it by common means.  If it is proved that the defendants pursued by their acts the same object, often by the same means, one performing one part and another part of the same, so as to complete it, with a view to the attainment of the same object, the jury will be justified in the conclusion that they were engaged in a conspiracy to effect that object." Regina v. Murphy, 8 C. & P. 297, 310 (1837) (Coleridge, J.).  See Pierce v. United States, 252 U.S. 239, 250 (1919).

The leading case on Section 1983 conspiracies remains Adickes v. S. H.

12

Kress & Co., 398 U.S. 144 (1970).  The plaintiff in that case had participated in a

sit-in demonstration to protest the segregation of a public library.  After the police

chief told the group that the library had been closed, the group crossed the street

to purchase lunch at the defendant's lunch counter.  The plaintiff alleged that a

police officer entered the store and observed the integrated group sitting

together.  Shortly thereafter, a waitress refused service.  Upon leaving the

restaurant, the plaintiff was arrested on a false charge of vagrancy by the same

officer who had observed her at the lunch counter.  In support of its summary

judgment motion, the defendant presented affidavits of its manager and

employees attesting that they had not seen or communicated with any police

officer.  Reversing the order granting summary judgment, the Supreme Court

(Harlan, J.) held that the mere presence of the officer was sufficient to permit an

inference of conspiracy.  "If a policeman were present, we think it would be open

to a jury, in light of the sequence that followed, to infer from the circumstances

that the policeman and a Kress employee had a 'meeting of the minds' and thus

reached an understanding that petitioner should be refused service."  398 U.S. at

155.  Conspiracies typically must be proven by inference from such concurrent

conduct and proof in that manner is entirely sufficient.  Thus, the fact that police

officers investigating an automobile accident who permitted the wrongdoers to

leave the scene during the investigation without submitting to alcohol testing,

13

combined with their failure to conduct other basic on-site investigative procedures, permitted an inference of a conspiracy between the investigating officers and the drunken drivers to cover up the wrongdoing of the latter in violation of the victims' First Amendment right of access to the courts. Delew v. Wagner, 143 F.3d 1219 (9th Cir. 1998).

Civil conspirators are liable for acts done in furtherance of some purpose of the conspiracy even if they are without knowledge of the specific acts. El Ramo, Inc. v. First National Bank of Nevada, 406 F.2d 1205 (9th Cir.), cert. denied, 396 U.S. 875 (1968). Thus, evidence of a conspiracy between civilians and police officers to carry out unconstitutional activities will be sufficient to impose Section 1983 liability upon the civilians. E.g., James v. Sadler, 909 F.2d 834 (5th Cir. 1990); Lewis v. Pearson Foundation, Inc., 908 F.2d 318 (8th Cir. 1990); State of New Mexico ex rel. Candelaria v. City of Albuquerque, 768 F.2d 1207 (10th Cir. 1985).

The evidence in this case permits a finding of conspiracy between DeNardo and the police defendants to effect the plaintiff's arrest. Plainly, DeNardo had been placed under arrest on an assault charge when defendant Deal arrived and ordered her released. Defendant Leary thereafter made prodigious efforts to persuade the plaintiff to drop the charges she had brought against DeNardo for a truly vicious assault, going so far as to threaten the

14

plaintiff with arrest should she refuse to cooperate.  When the plaintiff did refuse – and only then – DeNardo was summoned down to police headquarters as Leary had threatened, was given a police-authored statement to sign, and the prosecution of the plaintiff was commenced.  The statement given DeNardo by the police, and signed by her, was filled with falsehoods which were essential to establishing probable cause to charge the plaintiff.  Using that statement as a basis for their own efforts, Leary and Balnis then prepared arrest warrant affidavits which minimized and understated the culpability of DeNardo and simply fabricated claims against the plaintiff.  The arrest warrant affidavits concealed from the prosecutors and court the fact that the investigating officer at the scene had concluded that DeNardo had committed an assault upon the plaintiff and actually had arrested her for that crime, and concealed as well the fact that DeNardo's accusations against the plaintiff were recent fabrications never reported to the investigating officer at the scene.  Clearly the actions of all three – DeNardo, Leary and Balnis – were necessary to accomplish the plaintiff's arrest and prosecution.

"The right not to be arrested or prosecuted without probable cause has, of course, long been a clearly established constitutional right."  Loria v. Gorman, 306 F.3d 1271, 1291 (2d Cir. 2002) (quoting Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991).  Cf. Grand v. City of Long Beach, 315 F.3d 1081,

15

1089 (9th Cir. 2002).

"A section 1983 claim for false arrest [is based] on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause....The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest,' Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994)....In evaluating these matters, we consider the facts available to the officer at the time of the arrest." Ricciuti v. New York City Transit Authority, 124 F.3d 123, 128 (2d Cir. 1997). Cf., Caldarola v. Calabrese, 298 F.3d 156, 162 (2d Cir. 2002). "[T]he standard of probable cause 'applie[s] to all arrests, without the need to balance the interests and circumstances involved in particular situations.' Dunaway v. New York, 442 U.S. 200, 208 (1979).

In general, probable cause to arrest exists when the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime. Dunaway v. New York, 442 U.S. 200, 208 n.9 (1979); Wong Sun v. United States, 371 U.S. 471, 479 (1963); Brinegar v. United States, 338 U.S. 160, 175-76 (1949); Posr v. Court Officer Shield No. 207, 180 F.3d 409, 414 (2d Cir. 1999); Thompson v. Wagner, 319 F.3d 931, 934 (7th Cir. 2003); Breen v. Garrison, 169 F.3d 152, 153

16

(2d Cir. 1999); Mejia v. City of New York, 119 F. Supp. 2d 232, 253 (E.D.N.Y. 2000) (Trager, J.). "[P]robable cause exists only if the facts and circumstances within the arresting officer's knowledge 'are sufficient to lead an ordinarily prudent officer to conclude that an offense has been, is being, or is about to be committed, and that the putative arrestee is involved in the crime's commission.'" Iacobucci v. Boulter, 193 F.3d 14, 22 (1st Cir. 1999). Quoting Logue v. Dore, 103 F.3d 1040, 1044 (1st Cir. 1997). Cf. Rogers v. Pendleton, 249 F.3d 279, 290 (4th Cir. 2001).

"The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers, see, e.g., Singer v. Fulton County Sheriff, 63 F.3d at 118-19..., or may require a trial if the facts are in dispute, see, e.g., Moore v. Comesanas, 32 F.3d 670, 673 (2d Cir. 1994)...." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (Kearse, J.). An officer making a probable cause assessment must consider all of the information available to her, not merely that information which supports the arrest. Painter v. Robertson, 185 F.3d 557, 571 (6th Cir. 1999); Baptiste v. J.C. Penney Co., 147 F.3d 1242 (10th Cir. 1998).

"[L]aw enforcement officers have a duty to conduct a reasonably thorough investigation prior to arresting a suspect, at least in the absence of exigent circumstances and so long as law enforcement would not be unduly hampered if

17

the agents wait to obtain more facts before seeking to arrest....An officer need

not conduct a 'mini-trial' before making an arrest..., but probable cause does not

exist when a minimal further investigation would have exonerated the suspect."

Kuehl v. Burtis, 173 F.3d 646, 650 (8th Cir. 1999) (quotation marks omitted).

"Evidence tending to show [the plaintiff] did not commit the charged crimes is

relevant to whether the officers had probable cause to arrest her because

officers contemplating an arrest cannot 'disregard plainly exculpatory evidence,

even if substantial inculpatory evidence (standing by itself) suggests that

probable cause exists.'" Womack v. City of Bellefontaine Neighbors, 193 F.3d

1028, 1031 (8th Cir. 1999), quoting Kuehl, supra. Cf., Sevigny v. Dicksey, 846

F.2d 953, 956-58 (4th Cir. 1988); BeVier v. Hucal, 806 F.2d 123, 128 (7th Cir.

1986); Romero v. Fay, 45 F.3d 1472, 1276-77 (10th Cir. 1995). Therefore, while

police are entitled to act upon the basis of citizen complaints if those complaints

establish probable cause, the officers cannot ignore contrary evidence or refuse

to investigate when investigation seems plainly to be called for. "Police are

entitled to base an arrest on a citizen complaint, whether of a victim...or a

nonvictim witness, without investigating the truthfulness of the complaint, unless

-- this turns out to be an important qualification -- they have reason to believe it's

fishy." Guzell v. Hiller, 223 F.3d 518, 519-20 (7th Cir. 2000).

     The elements of a malicious prosecution case, whether under the Fourth

18

Amendment or under state law, are "(1) the defendant either commenced or con-
tinued a criminal proceeding against [the plaintiff]; (2) that the proceeding
terminated in his favor; (3) that there was no probable cause for the criminal
proceeding; and (4) that the criminal proceeding was instituted with actual
malice." Posr v. Doherty, 944 F.2d 91, 100 (2d Cir. 1991); Bonide Products, Inc.
v. Cahill, 223 F.3d 141, 145 (2d Cir. 2000).  "To prevail on a claim of malicious
prosecution, four elements must be shown:  (1) the defendant initiated a
prosecution against plaintiff, (2) without probable cause to believe the pro-
ceeding can succeed, (3) the proceeding was begun with malice and, (4) the
matter terminated in plaintiff's favor." Ricciuti v. New York City Transit Authority,
124 F.3d 123, 130 (2d Cir. 1997).  Another Second Circuit panel held that post-
arraignment restraint of liberty is necessary to establish a federal (but not a
state) malicious prosecution claim, but that this restraint of liberty is
demonstrated adequately by the fact that the plaintiff was required to return to
court after arraignment or comply with the conditions of his pretrial release.
Rohman v. New York City Transit Authority, 215 F.3d 208, 215-16 (2d Cir. 2000).
As Justice Ginsburg observed in Albright v. Oliver, 510 U.S. 266, 279 (1994), a
"defendant incarcerated until trial no doubt suffers greater burdens.  That
difference, however, should not lead to the conclusion that a defendant released
pretrial is not still 'seized' in the constitutionally relevant sense.  Such a defen-

19

dant is scarcely at liberty; he remains apprehended, arrested in his movements, indeed 'seized' for trial, so long as he is bound to appear in court and answer the state's charges. He is equally bound to appear, and is hence 'seized' for trial, when the state employs the less strong-arm means of a summons in lieu of arrest to secure his presence in court." Quoted in <u>Murphy v. Lynn</u>, 118 F.3d 938, 946 (2d Cir. 1997).

It has long been established that the intentional submission of material false information to a magistrate in order to obtain a warrant, which violates <u>Franks v. Delaware</u>, 438 U.S. 154 (1978), is actionable under Section 1983. If the violation involves issuance of an arrest warrant, the basis of the suit is malicious prosecution. If it involves issuance of a search warrant, the basis of suit is search and seizure without probable cause. <u>E.g.</u>, <u>Aponte Matos v. Toledo Davila</u>, 135 F.3d 182 (1st Cir. 1998); <u>Lombardi v. City of El Cajon</u>, 117 F.3d 1117 (9th Cir. 1997); <u>Hervey v. Estes</u>, 65 F.3d 784 (9th Cir. 1995); <u>Clanton v. Cooper</u>, 129 F.3d 1147 (10th Cir. 1997); <u>Breidenbach v. Bolish</u>, 126 F.3d 1288 (10th Cir. 1997); <u>Bruning v. Pixler</u>, 949 F.2d 352 (10th Cir. 1991); <u>DeLoach v. Byers</u>, 922 F.2d 618, 621-22 (10th Cir. 1990); <u>Kelly v. Curtis</u>, 21 F.3d 1544 (11th Cir. 1994). See also <u>Stewart v. Donges</u>, 915 F.2d 572 (10th Cir. 1990). "A plaintiff 'must make (1) a substantial showing of deliberate falsehood or reckless disregard for the truth, and (2) establish that but for the dishonesty, the challenged action

20

would not have occurred.  If a plaintiff satisfies these requirements, the matter

should go to trial.'...Materiality is for the court, state of mind is for the jury."

Butler v. Elle, 281 F.3d 1014, 1024 (9th Cir. 2002) (citations omitted).  Everyone

has a "right to be free from an arrest based on a warrant that would not have

been issued if the officer seeking the warrant had disclosed to the issuing

magistrate information within the officer's knowledge that negated probable

cause." Smith v. Edwards, 175 F.3d 99, 105 (2d Cir. 1999).  "To allege a

violation of that clearly established right, [a plaintiff] must demonstrate both that

[the officer] intentionally or recklessly made false statements in the warrant

application and that those statements were necessary to a finding of probable

cause." Loria v. Gorman, 306 F.3d 1271, 1289 (2d Cir. 2002).

      In Golino v. City of New Haven, 950 F.2d 864, 870-72 (2d Cir. 1991), the

Second Circuit held that the reckless omission of material exculpatory infor-

mation from an arrest warrant affidavit is actionable under Section 1983.  The

Court went on to hold that recklessness may be inferred when the omitted infor-

mation was critical to the determination of probable cause.  That being so, the

Court went on to hold that qualified immunity was not available to the defendant

police officers.  Cf., Mendocino Environmental Center v. Mendocino County, 192

F.3d 1283, 1295 (9th Cir. 1999) ["a police officer who recklessly or knowingly

includes false material information in, or omits material information from, a

21

search warrant affidavit 'cannot be said to have acted in an objectively reasonable manner, and the shield of qualified immunity is lost'" quoting <u>Branch v. Tunnell</u>, 937 F.2d 1382, 1387 (9th Cir. 1991)]; <u>Liston v. County of Riverside</u>, 120 F.3d 965 (9th Cir. 1997); <u>Ham v. Greene</u>, 248 Conn. 508, 729 A.2d 740, <u>cert. denied sub nom. Greene v. Ham</u>, 120 S. Ct. 326 (1999).  See also  <u>Soares v. State of Connecticut Dept. of Environmental Protection</u>, 8 F.3d 917, 920 (2d Cir. 1993); <u>LoSacco v. City of Middletown</u>, 822 F. Supp. 870 (D. Conn. 1993) (qualified immunity defense not available if plaintiff establishes intentional or reckless omissions of material information from a warrant affidavit); <u>Reese v. Garcia</u>, 115 F. Supp. 2d 284, 295-96 (D. Conn. 2000).

In this case, defendant DeNardo submitted a blatantly false affidavit at the urging and with the connivance of the defendants O'Leary and Balnis.  O'Leary and Balnis then exacerbated the situation by concealing material facts which would have demonstrated the falsity of the DeNardo affidavit.  As a result, the plaintiff was arrested and prosecuted in an effort which ultimately resulted in dismissal of the charge against DeNardo, a charge itself which was less serious than it should have been.

The role of defendant Deal in all of this is sufficiently clear from the evidence.  It was he who set the entire affair in motion by compelling his subordinate to release the defendant DeNardo after she had been arrested, who

22

was the first to refuse to allow the plaintiff's witness to give a statement, and who sent the plaintiff down to Detective Robles with instructions to Robles not to take a statement from the witness.  While denying that he is related to DeNardo, he admits being acquainted with her.  When two or more persons unite in an act which constitutes a wrong to another, intending at the time to commit it, or performing it under circumstances which fairly charge them with intending the consequences which follow, they incur a joint and several liability for the acts of each and all of the joint participants.  The law does not require the injured party to establish how much of the injury was done by one person and how much of the injury was done by another.  Rather, it permits the injured party to treat all concerned in the injury jointly and all are liable to respond to the plaintiff in a total sum as damages.  All those who actively participate in a wrongful act, by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify and adopt his acts for their benefit, are equally liable with him.  Express agreement is not necessary, and all that is required is that there should be a common design or understanding, even though it be a tacit one.  Prosser, Law of Torts Section 46, pp. 291-95 (4th Ed. 1971).

The motions for summary judgment should be denied.

23

Respectfully submitted:

_____
JOHN R. WILLIAMS (ct00215)
Williams and Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT 06510
203.562.9931
FAX: 203.776.9494
E-mail: jrw@johnrwilliams.com
Her Attorney

## CERTIFICATION OF SERVICE

On the date above stated, copies hereof were mailed to Christopher G. Arciero, Esq., Sack, Spector and Karsten, LLP, 836 Farmington Avenue, West Hartford, CT 06119-1544; and Raymond B. Rubens, Esq., P. O. Box 1555, Bridgeport, CT 06601-1555.

_____
John R. Williams

24